**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

------------------------------------------------------X
In re

ESTELLA BRIZINOVA AND
EDWARD SOSHKIN,

          Debtors.
------------------------------------------------------X
ROBERT L. GELTZER, CHAPTER 7
TRUSTEE OF THE ESTATE OF
ESTELLA BRIZINOVA AND
EDWARD SOSHKIN,

          Plaintiff,

- against -

ZLATA SOSHKIN a/k/a
ZLATA POLUKHINA

          Defendant.
------------------------------------------------------X

**Date & Time of Hearing:**
**02/22/18: 9:30 am**

Chapter 7

Case No. 12-42935 (ESS)

**Adv. Proc. No. Case 1-17-01157-ess**

## AMENDED NOTICE OF DEFENDANT'S MOTION TO DISMISS[1]

    ZLATA SOSHKIN, the defendant herein, through her undersigned counsel, hereby moves to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12 (b)(6) as incorporated by Rule 7012 of *Federal Rules of Bankruptcy Procedure.* The grounds for this motion are set forth in the Memorandum in support of Defendants' motion to dismiss the Complaint, filed herewith.

    Hearing on the Defendants Motion to Dismiss is scheduled for February 22, 2018 at 9:30 am before assigned bankruptcy judge Hon. Elizabeth S. Stong presiding over this

---

[1] *The defendant demands an article III adjudication of the dispute, in all aspects. No pleading or any filing by the defendant shall be construed as a consent to non-article adjudication.*

1

matter pending in bankruptcy unit of United States District Court, Eastern District of New York located at 271-C, Cadman Plaza East, Brooklyn, NY 11201-1800. Please file with the Court and send to the undersigned, any responsive pleadings at least seven days prior to the hearing.

Dated: December 14, 2017                    Dahiya Law Offices, LLC

                                            */s/karamvir dahiya*
                                            _____
                                            Karamvir Dahiya
                                            *Counsel for the Defendants*
                                            75 Maiden Lane Suite 506
                                            New York NY 10038
                                            Phone: (212) 766 8000
                                            Facsimile: (212) 766 8001
                                            karam@bankuptcypundit.com

# CERTIFICATE OF SERVICE

I hereby certify that on December 14, 2017, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on December 14, 2017, upon the following in the manner indicated:

**TARTER KRINSKY &DROGIN LLP**                *VIA ELECTRONIC MAIL*
*Proposed Substitute Special Litigation and Real Estate Counsel*
*to Robert L. Geltzer as Chapter 7 Trustee*
1350 Broadway, 11th Floor
New York, New York 10018
(212) 216-8000
Robert A. Wolf, Esq. (rwolf@tarterkrinsky.com)
Scott S. Markowitz, Esq. (smarkowitz@tarterkrinsky.com)

            */s/karamvir dahiya*
            _____
            Karamvir Dahiya (KD 9738)

**Preliminary statement**

*The circle is complete*

Robert Geltzer ("Geltzer") the bankruptcy trustee of debtors [Estella Briznova and Edward Soshkin] raising the scepter of marshalling of the estate property brings this lawsuit against the defendant, Zlata Poluhkhina, on a very tardy basis, for the issues that he should have grappled in 2012. But then, a trustee who keeps the net of "estate" wide open and for a very long time [unlike other trustees], despite serious obligation to expeditiously administer the estate, questions would arise for the motive behinds such a wait and watch, as the old Japanese expression: "If you sit by a river long enough, you'll see some body float by." He has sued all of the family of the debtors-- the two parents, the two sons and the last one pregnant wife of the married son. Geltzer has *completed the circle*. Merit there have been none to his lawsuits, however settlements have been obtained in the past and that moves this liturgy of lawsuits. Of course, the trustee has a duty to perform. But then, we keep looking at it . . . how long would it continue. An innocent family is being subjected to such a force and farce of law, even the undersigned counsel has not been spared—sanctions have been sought under 28 U.S.C. § 1927, 11 U.S.C.§105 and inherent powers of the court to stymie objections to the genre of lawsuits. Perhaps as the facts would unravel; the sanctions narrative might have to change. This trustee and his counsel obtained personal records of the defendant, unlawfully in complete violation of federal rules of the civil procedure and this unlawfully obtained personal documentations have become a basis. But still, no individuated thinking has gone before bringing this lawsuit, basic understanding of bankruptcy law is lacking.

As this Court states on several occasions, "they have a duty to perform," it is unclear how long would this shield them from the lawsuits undertaken to force people to settle. Slightest objections by adverse parties are a target of sanctions. Linguistic differences have slighted and slated such sanctions motions. How long would this continue, differentiated approach and its approbation by this Court?

This lawsuit despite its glossiness and punch fervors lacks the stamina and standard of pleading. Geltzer suddenly becomes very concerned after a gap of few years dealing with the debtors' estate that he is administering, someone else has been preying upon it. What was he administering though or claiming to do so? A third entity, an independent corporation and a related valueless trademark. Misplaced is his factual grasp of facts and if it is proper, then it is being

twisted, impermissibly to achieve unlawful results. Settlement offers have been made by the plaintiff counsel. But it pales the truth. And that is not acceptable to us. We, of course reserve the right to bring a motion for sanctions and exclusion of any materials used here to obtain unlawfully the information mentioned in this Geltzer's complaint. For now, and for this underlying complaint, we suggest dismissal with cost and penalties and attorneys fees.

*Factual underpinning of the Complaint militates against any relief sought by the trustee*

The factual underpinnings of this Complaint at best are descriptive [not accusatorial, as warranted under new pleading standard] and also denies any grounds for relief. A claim will fail this inspection if it asserts a legal theory that is not cognizable as a matter of law or if the factual tale it alleges is ruled to be implausible. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 & 570 (2007); *Zixiang Li v. Kerry,* 710 F.3d 995, 999 (9th Cir. 2013). Of course, the pleader enjoys, "the benefit of imagination" and Geltzer has a lot of it, *Bissessur v. Indiana Univ. Bd. Of Trustees,* 581 F.3d 599, 602-03 (7th Cir. 2009), yet he still must rise above the trivial. See *Ashcroft v. Iqbal,* 556 U.S. 662, 678-79 (2009). Thus, the pleading must contain "enough" information to give defendant fair notice of both the complaint's claims and the grounds on which they rest. *Tellabs, Inc. v. Makor. Issues & Rights, Ltd,* 551 U.S. 336, 346-47 (2005). It must "possess enough heft," to show an "entitle[ment] of relief," to allow the costly process of litigation to continue. Twombly at 545.

Thus, two pillars of the pleading--factual plausibility and legal viability both, pari passu, must continue to sustain the complaint. Plausibility naturally necessitate details and dovetailing with the legal prescriptions.

This complaint is anchored in flawed legal understanding, despite it being festooned with cosmetic whip of an estate aura. Hard facts and coupled with a calm mind would have militated against this complaint. Geltzer for obvious reasons, to concoct a legal case, blurs the boundaries

of estate and make it all encompassing, even those entities, which are independent of the debtors, they too are pulled into it. But law does not permit it.

*Primal fallacy of Geltzer's pleading—Term "Estate" not construed properly*

The very understanding of Geltzer regarding nature and nadir of the section 541 estate is fallacious,

> As set forth in Schedule B to the Debtors' petition filed in this case, as of the Petition Date, the Debtor Estella Brizinova ("Brizinova") held a 100% ownership interest in a New York corporation, ENSI Consulting, Inc. ("ENSI"). Upon the filing of their petition, said 100% ownership interest in ENSI became an asset of the Debtors' bankruptcy estate of which Plaintiff was and remains the Trustee. Comp. ¶ 9.
>
> . . .
>
> Notwithstanding that as of the Petition Date, Brizinova's 100% interest in ENSI became property of the Debtors' bankruptcy estate, and without any authorization from the Trustee whatsoever, ENSI continued to sell auto parts subsequent to the Petition Date for a period in excess of three (3) years, commencing on the Petition Date of April 24, 2012 and ending no earlier than July 18, 2015.

Comp.¶ 12. After laying his jurisprudence, he declares the offense,

> Notwithstanding that the bankruptcy estate has been the rightful owner of the 100% interest in ENSI since the Petition Date, and that the Post-Petition Sale Proceeds constitute property of the Debtors' estate, none of the Post-Petition Sale Proceeds have ever been turned over to the Trustee, despite his repeated demands therefor.

Ibid. ¶ 13. False is the claim that any assets, even name sake of the entity ENSI, could be property of the estate under 11 U.S.C. § 541. Also false is the perjurious claimed by Geltzer that he made "*repeated demands therefor*." (Emphasis added). First, there was never any claim made for turnover of the [fictional] assets of the ENSI, rather the debtors had declared openly and honestly that they had a corporation and or any trade mark, he was free to take it. Geltzer had no response. *Second*, corporate ENSI is an independent entity and ownership interest in the corporate entity does not create property of the estate in the assets of ENSI. ENSI has and had NO Assets for

marshalling or to be provided. For argument sake and find rationality to the specious argument of Geltzer, let us attach some fictional asset to ENSI.

ENSI assets are not those of this estate, despite vehement demands. Asset of ENSI belongs to ENSI which is not in bankruptcy. ENSI is a New York corporation, separate existence,

> The corporate assets of Fowler Trucking, Inc. are not property of the debtor and therefore cannot become property of Fowler's bankruptcy estate. Hence, the question of an exemption does not arise. See 2 Collier on Bankruptcy § 101.30[3], pg. 101-96 (15th ed. rev.) (stating that "while the individual's interest in the partnership or corporation (which could be 100%) would be property of the estate, the assets of the partnership or corporation would not be."); Ginsberg and Martin on Bankruptcy § 5.01[B] (stating that "the interest in question [an interest included in the estate] must be the debtor's property. For example, if the debtor owns shares in a corporation, the shares become part of the estate; the assets of the corporation do not.").

*Fowler v. Shadel,* 400 F.3d 1016, 1019 (7th Cir. 2005). Which shares of the corporation have been taken away? None. The complaint is silent about it. The Fowler court further elaborated on this,

> Bankruptcy courts confronted with this question in other contexts have also held that corporate assets cannot become part of the bankruptcy estate of the debtor shareholder. In re Murray, 147 B.R. 688, 690 (Bankr.E.D.Va.1992) (denying the debtor's motion to enforce an automatic stay because property owned by corporations of which debtor's husband was sole shareholder was not property of the bankruptcy estate because the debtor's equitable interests did not run to the property but only to the stock, and thus there was no present property interest); In re Russell, 121 B.R. 16, 17 (Bankr.W.D.Ark.1990) (stating that "[a] corporation has a separate legal existence from its shareholders, and the corporation, not its shareholders, owns the corporate assets and owes the corporate debts."); In re Normandin, 106 B.R. 14, 16 (Bankr.D.Mass.1989) (holding that Chapter 13 debtor shareholder was not entitled to a partition sale of a corporation in which he owned stock because ownership of capital stock did not extend to ownership of corporate assets).

*Id. Fowler.* ENSI itself never became the property of the estate. It has an independent structure and is an independent entity. "This is consistent with the general principle that bankruptcy protections are intended for the benefit of debtors and not third-party entities, even wholly-owned third parties." *In re Coenen*, 487 B.R. 539, 541 (Bankr. W.D. Wis. 2012). ENSI is a separate entity

and is not part of the estate. A New York corporation has an existence separate and distinct from that of its individual members and stockholders and such entity remains unchanged and unaffected in its identity notwithstanding changes in its membership. *Rapid Transit Subway Const. Co. v. City of New York*, 259 N.Y. 472, 182 N.E. 145 (1932); *In re Mt. Sinai Hospital*, 250 N.Y. 103, 164 N.E. 871, 62 A.L.R. 564 (1928); *Elenkrieg v. Siebrecht*, 238 N.Y. 254, 144 N.E. 519, 34 A.L.R. 592 (1924).

ENSI's corporate property is vested in the corporation itself, and not in the stockholders and thus bankruptcy of the debtor does not make its assets as property of estate. Even if the corporation is owned by a single person, it does not lose its own identity and they are separate from the owner. *Rohmer Associates, Inc. v. Rohmer*, 36 A.D.3d 990, 830 N.Y.S.2d 356 (3d Dep't 2007). *Harris v. Stony Clove Lake Acres Inc.*, 202 A.D.2d 745, 608 N.Y.S.2d 584 (3d Dep't 1994) (holding that, in an action to foreclose a mortgage executed on behalf of a corporation, the sole shareholder of the corporation could intervene in the action on her own behalf but could not successfully assert that she was the alter ego of the corporation and thereby earn the right to interpose defenses on behalf of the corporation); *Adler v. G & B Fasteners, Inc.*, 143 A.D.2d 614, 532 N.Y.S.2d 898 (2d Dep't 1988)(holding that the corporation could not be bound by a settlement agreement in an unrelated action to which it was not a party, although its sole shareholder was a party to the action and signed the agreement in his individual capacity).

ENSI is not properly before this Court. ENSI's share, the trustee's interest in the shares does not bring it to the estate. As the Second Circuit panel stated this well settled proposition a case predating the Bankruptcy Reform Act of 1978,

> [The debtor's] [o]wnership of all of the outstanding stock of a [nondebtor] corporation...is not the equivalent of ownership of the subsidiary's property or assets.... If it is desirable for the Bankruptcy Court to have jurisdiction of all litigation involving subsidiaries, solvent or not, of the debtor, the answer lies with Congress.

8

*Feldman v. Trustees of Beck Indus., Inc. (In re Beck Indus., Inc.),* 479 F.2d 410, 415 (2d Cir. 1973) (interpreting Section 516(4) of the Bankruptcy Act and stating that assets of a non-debtor subsidiary are not considered property of a parent company's chapter 11 estate, even when the parent owns all of the outstanding stock of a non-filing subsidiary corporation). Thus the claim, "[the bankruptcy estate has been the rightful owner of the 100% interest in ENSI since the Petition Date, and that the Post-Petition Sale Proceeds constitute property of the Debtors' estate . . . ," is meaningless and does not provide any template to plead to a thoughtful pleader. Now with this background of the estate being defined statutorily, the allegations of conversion fall flat on several fronts.

Geltzer pleads,

> As set forth above, Defendant willfully, knowingly and wrongly has converted property belonging to the Debtors' estate, namely (a) the estate's 100% interest in ENSI, and (b) the Post-Petition Sale Proceeds, which have been derived from the aforementioned sales of ENSI auto parts effectuated via the aforesaid eBay account registered in Defendant's name, which then have been deposited into Defendant's aforesaid PayPal account, and which then in part have been used for Defendant's own personal purchases and/or use and for purchases made by and/or on behalf Defendant's husband Nick Soshkin and the Debtors' other son (Defendant's brother-in-law) Igor Soshkin.
> Thus, Defendant willfully, knowingly and wrongly has exercised dominion and control over, and has converted to the aforesaid uses, such property, namely the estate's 100% interest in ENSI and the Post-Petition Sale Proceeds, to the exclusion and detriment of the Trustee and of the Debtors' estate.
> As a result of said willful, knowing and wrongful conversion of the estate's property by Defendant, the Trustee is entitled to an award of: (a) damages in an amount to be determined at trial, currently estimated to be in the amount of at least $42,431.66, together with interest thereon; and (ii) of punitive damages in an amount to be determined by this Court.

Comp. ¶¶ 20 to 22. Conversion is NOT made out. *First,* there was never any estate property that is subject of discussion of conversion. Because the debtor did not have the property flowing into the estate. The complainant confuses the basics—*mixes up estate with ownership of the shares of the independent corporate entity*. (Emphasis added). Very clearly "estate 100% interest in ENSI"

9

does not make ENSI an estate asset. *Second,* no assets of the ENSI have been removed. Why? Simple, it has no assets. The complaint says "ENSI auto parts" but where are or were those assets? The complaint does not describe it. ENSI had no auto part becoming property of the estate. Perhaps, as in another pending frivolous case, the pleader is attempting to say that the name of ENSI was used or some trademark was used. But that is not subject to conversion. Sp*orn v. MCA Records, Inc., 58* N.Y.2d 482, 489, 462 N.Y.S.2d 413, 448 N.E.2d 1324 (1983) (noting that "an action for conversion will not normally lie, when it involves Intangible property"). *See also Star Contracting Co. v. McDonald's Corp.,* 201 A.D.2d 721, 608 N.Y.S.2d 327, 327 (1994); *Rao v. Verde,* 222 A.D.2d 569, 635 N.Y.S.2d 660, 661 (1995) (Plaintiffs claimed conversion over the information contained in the lists, which defendants continued to use after they returned the documents to plaintiffs. *Id.* The court held that such intangible information could not be the subject of a conversion action.)

"A conversion takes place when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that person's right of possession*." Colavito v. New York Organ Donor Network, Inc*., 8 N.Y.3d 43, 49–50, 827 N.Y.S.2d 96 (2006): accord A*lzheimer's Disease Res. Ctr., Inc. v. Alzheimer's Disease & Related Disorders Ass'n, Inc.*, 981 F. Supp.2d 153, 163 (E.D.N.Y. 2013) ("[A] plaintiff must allege: (1) the property subject to conversion is a specific identifiable thing; (2) plaintiff had ownership, possession or control over the property before its conversion; and (3) defendant exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights." *Moses v. Martin,* 360 F.Supp.2d 533, 541 (S.D.N.Y.2004) (citation and internal quotation marks omitted). Or in simpler words, "[t]wo key elements of conversion are (1) plaintiff's possessory right or interest in the property and (2) defendant's dominion over the property or

interference with it, in derogation of plaintiff's right." *Colavito v. New York Organ Donor Network, Inc.,* 8 N.Y.3d 43, 50, 827 N.Y.S.2d 96, 860 N.E.2d 713 (2006) (citations omitted).

To prevail on its conversion claim, Geltzer must establish that the defendants "'exercised an *unauthorized dominion* over ENSI to the exclusion of [Geltzer] rights.'" *TAP Maintenance Manutenaco e Engenharia Brasil S.A. v. Int'l Aerospace* Group, Corp., 127 F. Supp.3d 202, 210 (S.D.N.Y. 2015). Estate did not have possessory right in ENSI and thus the ddefendant could not have exercised "dominion over the property or interference with it, in derogation of plaintiff's right." Further, "[w]here the original possession is lawful, a conversion does not occur until after a demand and refusal to return the property." *D'Amico v. First Union Bank*, 285 A.D.2d 166, 172 (1st Dept. 2001) (citing *MacDonnell v. Buffalo Loan, Trust & Safe Deposit Co*., 183 N.Y. 92, 101, 85 N.E. 801 (1908)). "The refusal that will turn lawful possession into conversion must, however, be absolute. *If it be qualified and the qualification is reasonable, made in good faith and communicated to the owner, there is no conversion*." 2A N.Y. Pattern Jury Instructions 3:10 at p. 134. (2017) (citing cases).

Geltzer examined the debtors in 2012. The estate came into being in 2012. What demand did he ever make for what assets? Never. Because he could only ask what belonged to the debtor. No assets belonged to the debtor other than the exempted assets. If there was any asset [hypothetically] it belonged to an independent entity and that is not estate. So the grounds upon which the entire complaint rest, crashes.

For argument sake, let us change the law and make wholly owned corporations as part of the debtors estate, then also under the circumstances here there is no conversion. Someone going to the website not denying the same right to Gelzer is not conversion. See *Harper v. Row Pubs. V. Nation Enters.,* 723 F.2d 195, 201 (2nd Cir. 1983) ("Conversion requires not merely temporary

11

intereferrence with property rights, but the exercise of unauthorized dominion and control to the complete exclusion of the rightful possessor."). The complaint does not tell us what attempts were made Geltzer to go to the website or account of ENSI and deal with the transactions. How many sales did he try to conduct online. What did he do? What did he do to take over the corporation? What steps did he take to marshal that asset? What steps did he take, obligatory under section 704 of the Bankruptcy Code. Gaunt and glaring is the complaint. It has neither the "heft" nor the hue. It must be dismissed. Indeed, what these proceedings reflect is nothing but egregious neglect.

***Turnover of Estate property could only relate to turn over of the Estate property and not of an independent lawful entity***

Since there is not any property of the estate here, the claim for turnover of the property fails. Since there is no estate property in question here or there or in custody of the defendant, there is no turn over. So for lessons, the commencement of a case under 11 U.S.C. § 301 creates an estate. 11 U.S.C. § 541(a). The property of that estate consists of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The Bankruptcy Code does not define the legal and equitable interests that may be included in an estate. Instead, "Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law." *Butner v. U.S*., 440 U.S. 48, 54, 99 S.Ct. 914, 917 (1979); *UNR Industries, Inc. v. Continental Casualty Co*., 942 F.2d 1101, 1103-04 (7 Cir. 1991). New York law governs. Under New York law, shareholders have the right to select those who will manage the corporate affairs, to share in the corporation's profits by dividend distribution, and to participate in a distribution of the net assets of the corporation upon its dissolution. They, however, are not the owners in any legal sense of any part of the corporation's property. *Fowler v. Shadel,* 400 F.3d 1016, 1018 (7th Cir. 2005) (Assets of debtor's wholly-owned corporation are not property of the debtor and cannot become part of the bankruptcy estate of the debtor

shareholder). Section 542 requires an entity in possession, custody, or control of "property that the trustee may use, sell, or lease under section 363" to deliver the property to the trustee. However, Section 363 only authorizes a trustee to use, sell, or lease "property of the estate". 11 U.S.C. § 363. Thus, the Trustee may sell the Debtor's shares in ENSI, but he may not sell the corporate assets of ENSI. Neither Section 542 nor Section 363 provides authority for the Trustee to reach the assets of a non-debtor corporation,

> Merely possessing an equitable interest in property does not render that property "part of the estate"; at best, the estate has a claim to that property. Until a trustee exercises her authority under the Bankruptcy Code to assert the equitable claim to property, that property cannot be fairly considered property of the estate subject to the trustee's turnover authority. Because the Trustee never successfully brought MJCC and its properties within the property of the estate, section 542 is simply inapplicable and, thus, Titan's turnover claims must fail.

*In re Flanagan,* 415 B.R. 29, 48–49 (D. Conn. 2009)

**There is no violation of stay of as there was no stay in place**

Gelzer is a very concerned after few years and after having neglecting his duties of expeditious marshalling of assets. He complains,

> Defendant had knowledge of the Debtors' filing of their petition in this case and that as of the Petition Date, the Trustee, on behalf of the debtor's bankruptcy estate, had become the owner of Brizinova's 100% interest in ENSI and was entitled to a turnover of that interest and of all Post-Petition Sale Proceeds therefrom.
> Notwithstanding said knowledge, Defendant, intentionally, willingly and knowingly violated the automatic stay under Section 363(a)(3) of the Bankruptcy Code by causing: (a) post-Petition Date sales of ENSI auto parts to be effectuated via her aforesaid eBay account, (b) the Post-Petition Sale Proceeds derived therefrom to be deposited into her aforesaid PayPal account, and (c) certain of those Post-Petition Sale Proceeds to be used for Defendant's own personal purchases and/or use and for purchases made by and/or on behalf Defendant's husband Nick Soshkin and the Debtors' other son (Defendant's brother-in-law) Igor Soshkin

Comp. ¶ ¶ 25 and 26. Geltzer states that, that "[b]y reason of the foregoing, the Debtors' estate has been damaged." Estate can only be damages if something is take away from the estate. Non estate property, its depletion or enhancement does not relate to the estate. Also, record is clear that Geltzer did not move to obtain any injunction or restraining orders against or vis-à-vis ENSI.

> It is well established that the automatic stay generally " 'protects only the debtor, property of the debtor or property of the estate. It does not protect non-debtor parties or their property.' " *Gross Found., Inc. v. Goldner,* 12 Civ. 1496, 2012 WL 6021441, at *7 (E.D.N.Y. Dec. 4, 2012) (*quoting In re Advanced Ribbons & Office Prods., Inc.,* 125 B.R. 259, 263 (9th Cir. BAP 1991)

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 490 B.R. 59, 65 (S.D.N.Y. 2013), *aff'd sub nom. Picard v. Fairfield Greenwich Ltd.,* 762 F.3d 199 (2d Cir. 2014). What was the damage caused to Geltzer? Nothing, for there were no acts against the property of the estate. Not against the debtors were there any acts by the defendant. The automatic stay will generally not arise to protect the assets of a non-debtor, separate legal entity, even where the debtor has an ownership interest in the entity. See, e.g., *Kreisler v. Goldberg*, 478 F.3d 209, 213, 47 Bankr. Ct. Dec. (CRR) 233, Bankr. L. Rep. (CCH) P 80866 (4th Cir. 2007) (holding that section 362(a)(1) did not protect debtor from suit against debtor's wholly owned subsidiary because "[i]t is a fundamental precept of corporate law that each corporation is a separate legal entity with its own debts and assets, even when such corporation is wholly owned by another corporate entity" and, if the wholly owned subsidiary "wished to receive the protections afforded by § 362(a)(1), it must have filed for bankruptcy" itself); *In re Hart,* 530 B.R. 293, 303 (Bankr. E.D. Pa. 2015) (holding that automatic stay did not apply to assets of LLC owned by debtor because, under state law, "prior to dissolution, members do not have any interest in the specific assets of an LLC"); *In re Brines,* 2015 WL 3476695, *2 (Bankr. D. Kan. 2015) (noting that "the fact that Debtors are the sole owners of the corporate entity … does not bring the collateral and assets of [the corporate entity] within Debtors' bankruptcy estate").

The whole gamut of estate-ness that Geltzer has spawned with spurious legal theories is not a viable complaint.

***This Court does not have any jurisdiction on the underlying issues of the Complaint***

In order for this court to have jurisdiction on this lawsuit, the Bankruptcy Court's jurisdiction against the defendant must be based on the "arising under," "arising in," or "related to" language of §§ 1334(b) and 157(a). *Celotex Corp. v. Edwards,* 514 U.S. 300, 307, 115 S. Ct. 1493, 1498, 131 L. Ed. 2d 403 (1995). The federal courts being courts of limited jurisdiction, jurisdictional grant is given a very narrow reading.

It is clear that two conditions must be met before a court could adjudicate the matter. First, Article III, Section 2 of the Constitution, which describes the kinds of cases to which the federal judicial power may extend, must authorize it; and second, Congress must have vested in the federal courts the power to hear those case. If either of these factors is absent, the federal courts are not empowered to hear the case. U.S. Const., Art. III § 2. Article III provides that the federal judicial power shall extend to all cases "arising under" the Constitution, laws, or treaties of the United States. Moreover, Congress has provided for federal court jurisdiction over federal questions in 28 United States Code Section 1331. The language of the current federal question statute3 is strikingly similar to that of the constitutional provision: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States." 28 U.S.C. §1331(a) (emphasis added). "Arising Under" Clause contained in Article III--these include jurisdiction for suits arising under the patent laws, 28 U.S.C. § 1338(a), for antitrust cases, 28 U.S.C. § 1337 and for for suits arising under any act of Congress regulating commerce, 28 U.S.C. § 1337, .. The test for "arising under" jurisdiction in these statutes is identical to that for Section 1331. *Christianson v. Colt Indus. Operating Corp*., 486 U.S. 800, 808 (1988) (cases interpreting language in § 1331 that is identical to that in § 1338 have applied same test); *Pratt v. Paris Gas Light & Coke Co*., 168 U.S. 255, 259 (1897) (exclusive jurisdiction vested in federal courts over cases arising under patent laws). Bankruptcy court jurisdictional grant has been generally passed of with silence barring the issues related to the presiding officers as non-article III persons. See *N. Pipeline Const. Co. v. Marathon Pipe Line Co., 458 U.S. 50 (1982), Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 52 (1989), and *Stern v. Marshall*, 564 U.S. 462 (2011).

When the issues related to the core bankruptcy functions, altering debtor creditor relationships, the jurisdiction is unquestionable. *Lathrop v. Drake,* 91 U.S. 516, 517-18 (1875)

(stressing that a "uniform system of bankruptcy, national in its character, ought to be capable of execution in the national tribunals, without dependence upon those of the States in which it is possible that embarrassment might arise"); *Schumacher v. Baeler*, 2903 U.S. 367, 374 (upholding the Bankruptcy Act of 1898); *Williams v. Austrian,* 331 U.S. 642 (*1947) (upholding a similar jurisdiction over actions by the trustee in reorganization under the Chandler Act of 1938). Also, *Northern Pipeline* at 72 n.26(1982)(The four justice plurality opining that claim against the third party could have been "adjudicated in federal court on the basis of its relationship to the petition for reorganization," but other five justices did not address the subject matter jurisdiction).

Geltzer claims are not claims arising in the bankruptcy proceeding. Through 28 U.S.C § 1334, the district courts were provided jurisdiction over civil proceedings arising in, arising under, and related to a bankruptcy case. Further, 28 U.S.C. § 157 allowed the district court to refer all civil actions, whether arising in, arising under, or related thereto, to the bankruptcy court. Despite Geltzer characterization, the issue of conversion and or using non-estate property etc. does not *arise in* or *arising under* the bankruptcy code. Case arise under the law that creates the cause of action. The underlying facts of the complaint does not clearly. *American Well Works Co. v. Layne & Bowler Co*. 241 U.S. 257, 258–259 (1916). Whether ENSI products or assets are the property of the estate is a matter of the estate law. What assets belongs to the debtor is determined by the state laws. Because the cause of action in this case arose from state law, rather than the federal law, the case arose under state law, rather than the bankruptcy law. *Id.* Nor is it a question of state law cause of action turning on construction of federal laws. There is federal question jurisdiction if a well-pleaded complaint establishes that plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law. Geltzer complaint does not do that. *Gully v. First Nat'l Bank*, 299 U.S. 109 (1936) (for cause to arise under Constitution or laws of United

States, right must be essential element of plaintiff's cause of action). there is bankruptcy question jurisdiction if a well-pleaded complaint establishes that Geltzer's right to relief necessarily depends on resolution of a substantial question of bankruptcy law. There is no issue of federal law, it is what properties are of estate, that is determined exclusively by the state law and then who mechanism of stay, conversion etc. kicks in. He pushes the agenda of estate and brings in its fold entities that are completely independent of the estate to create an estate like issue. The issue of federal law must be "substantial." In the words of the Supreme Court, the claim of federal law must not be "so patently without merit" that the allegation could be called "insubstantial," "implausible," or "frivolous." See, e.g., *Hagans v. Lavine*, 415 U.S. 528, 535, 542–543 (1974); *Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 666–667 (1974); *Bell v. Hood*, 327 U.S. 678, 682–683 (1946). And bankruptcy claims here are frivolous, for there is no estate that Gelzer is fighting about. It is about non estate property. And just because a trustee could be given a statutory right to fight a case on behalf o the estate, that in itself is not a reason enough for jurisdiction. See also *In re TMI Litigation Cases Consolidated II*, 940 F.2d 832, 850 (3d Cir. 1991) (central teaching of *Osborn v. Bank of U.S.,* 22 U.S. 738, 761, 6 L. Ed. 204 (1824) is that case cannot be said to arise under federal statute if statute is nothing more than jurisdictional grant).

Now comes the issue of related to jurisdiction. "[A] bankruptcy court's "related to" jurisdiction cannot be limitless." *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995). Also, "[T]he jurisdiction of bankruptcy courts may extend more broadly in the former [chapter 11] case than in the latter [chapter 7]". Id. at 310. There is no ongoing reorganization here, which would be impeded by any complained of activities. Id.

This court lacks jurisdiction on the issues. See *Dynamic Drywall, Inc. v. McPherson Contractors, Inc.*, 2015 WL 4744501, *2 (D. Kan. 2015) (concluding that the Chapter 11 debtor's

claims were not for turnover, but were merely "non-core state law claims, including the state law conversion claim.)

**Statute of limitation bars any action.**

Geltzer speaks about conversion starting in 2012. Now it is 2017. The statute of limitations for conversion is three years. N.Y. C.P.L.R. § 214(3). No action can proceed against the defendant. The so called estate interest in the ownership of the corporate ENSI arose on the date of the petition. All was declared, paperwork was transparent. The so-called estate of or for marshalling of the debtor came into being upon the filing and loomed very large at Geltzer. Geltzer had notice on the date of the 341 meeting of the creditors. Yet he did not move. He was egregious [if there were asset of the estate] in not marshalling or taking control of the inventory or stock.

"A cause of action for conversion accrues when all of the facts necessary to sustain the cause of action have occurred, so that a party could obtain relief in court." *Seventh Regiment,* 98 N.Y.2d 249, 259, 746 N.Y.S.2d 637, 774 N.E.2d 702 (2002) (quotation omitted). A cause of action for conversion is complete when the party in possession of the property openly interferes with the true owner's rights in it. *Id.* at 260–61, 746 N.Y.S.2d 637, 774 N.E.2d 702. If the party in possession has not acquired possession wrongfully, and has not otherwise exercised wrongful dominion over the property, the possessor does not convert the property until he refuses a demand for its return from a party with a superior and immediate right of possession. *Id.; MacDonnell v. Buffalo Loan, Trust & Safe Deposit Co.,* 193 N.Y. 92, 101, 85 N.E. 801 (1908). Here, it was in 2012 that the bankruptcy was filed and the so-called estate created. And the debtors were examined and openly talked about all what they have and had. Geltzer had notice. ENSI was listed as the corporate entity, wherein one debtor had 100% ownership interest.

Now it is 2017, five years have passed. Statute of limitation expired.

Wherefore, based on the foregoing discussion, the complaint fails to make a case and must be dismissed for lack of cause of action, lack of jurisdiction, lack of timeliness and latches.

Dated: New York NY
December 14, 2017 /s/karamvir dahiya
_____
Karamvir Dahiya