**TARTER KRINSKY & DROGIN LLP**
*Substitute Special Litigation Counsel*
*to the Chapter 7 Trustee*
1350 Broadway, 11th Floor
New York, New York 10018
(212) 216-1159
Robert A. Wolf, Esq.
rwolf@tarterkrinsky.com

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

------------------------------------------------------------

In re

**ESTELLA BRIZINOVA AND**
**EDWARD SOSHKIN,**

      Debtors.

Chapter 7

Case No. 12-42935 (ESS)

------------------------------------------------------------

**ROBERT L. GELTZER, CHAPTER 7**
**TRUSTEE OF THE ESTATE OF**
**ESTELLA BRIZINOVA AND**
**EDWARD SOSHKIN,**

      Plaintiff,

  - against -

**ZLATA SOSHKIN a/k/a**
**ZLATA POLUKHINA,**

      Defendant.

Adv. Proc. No. 17-01157 (ESS)

------------------------------------------------------------

<u>**PLAINTIFF-TRUSTEE'S MEMORANDUM OF LAW**</u>
<u>**IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**</u>

## PRELIMINARY STATEMENT

Plaintiff Robert L. Geltzer, as Chapter 7 trustee ("**Plaintiff**" or "**Trustee**") of the Estate of Estella Brizinova ("**Brizinova**") and Edward Soshkin ("**Soshkin**"; together with Brizinova, the "**Debtors**"), by his undersigned special counsel, hereby submits this Memorandum of Law in opposition to the motion (the "**Motion**") of defendant Zlata Soshkin a/k/a Zlata Polukhina ("**Defendant**") to dismiss the Trustee's complaint against Defendant in this adversary proceeding (the "**Complaint**").

The Trustee's claims in this adversary proceeding center upon: (a) the Defendant's improper receipt and conversion of profits derived from the post-petition sales of auto parts by ENSI Consulting, Inc. ("**ENSI**"), an entity that, as of the petition date, was 100% owned by the Debtor Brizinova, and thus became property of the bankruptcy estate upon the petition date; and (b) violations of the automatic stay.

These claims are based upon third party discovery and additional information obtained during the course of the Debtors Adversary which show that Defendant, who is the Debtors' daughter-in-law, was using the ENSI eBay account to effectuate ENSI auto part sales post-petition, and that proceeds therefrom were being deposited into a PayPal account registered to Defendant, and linked to Defendant's checking accounts. These claims are virtually identical to those asserted in another pending adversary proceeding in this bankruptcy case brought by the Trustee against the Debtors, Geltzer as Trustee v. Estella Brizinova and Edward Soshkin, Adv. Proc. No. 15-01073 (ESS) (the "**Debtors Adversary**"). The Trustee commenced the Debtors Adversary based upon, among other things, documentary evidence indicating that ENSI's sales of auto parts over the internet had continued well after the Petition Date, evidence that belied the Debtors' contrary contentions in their respective Bankruptcy Rule 2004 exams that ENSI had stopped operating prior to the Petition Date.

{Client/007401/BANK833/01490468.DOCX;3 }    1

Just as he now has moved in this adversary proceeding on behalf of Defendant, Karamvir Dahiya, Esq. of Dahiya Law Office, LLC ("**Dahiya**"), as counsel to the Debtors in the Debtors Adversary, moved to dismiss the Trustee's claims therein for turnover of estate property, violation of the bankruptcy automatic stay, and conversion of estate funds. That dismissal motion, opposed by the Trustee, was denied by this Court in substantial part in its July 20, 2016 Memorandum Decision on Amended Motion to Dismiss Adversary Complaint (the "**Memo Decision**"), a copy of which is annexed hereto as Exhibit 1.[1]

Dahiya did not argue in the dismissal motion in the Debtors Adversary that the ENSI post-petition sale proceeds were not property of the bankruptcy estate (see Document No. 8 on the Court's electronic docket for Adv. Proc. No. 15-01073); more importantly, this Court made holdings in its Memo Decision that the Trustee had adequately alleged that such proceeds were property of the bankruptcy estate – holdings which constitute the law of this bankruptcy case. Specifically, in its Memo Decision, this Court held that the Trustee had adequately alleged that said sale proceeds were, indeed, property of the bankruptcy estate:

> That is, the Trustee alleges that the property at issue is sale proceeds from from the operation of ENSI which, in turn, was owned by the Defendants [the Debtors] and became estate property upon the filing of the Defendants' [the Debtors'] bankruptcy case. **And that is adequate to allege that the property at issue here was property of the estate**.

Memo Decision at 26 [emphasis added].

On this same issue, the Court further held that "the Trustee has adequately alleged that the estate had title or a right to possess the sale proceeds," *id.* at 37, and that "The Bankruptcy

---

[1] In the Memo Decision, this Court denied dismissal of (a) the Trustee's turnover claim, (b) his claim for violations of the bankruptcy stay, and (c) that portion of his conversion claim that alleged conversion of the estate's 100% ownership interest in ENSI. The Court granted dismissal only as to that portion of the Trustee's conversion claim that alleged conversion of the ENSI sale proceeds, on the ground that the Trustee had not alleged the conversion of specifically identifiable funds.

Code authorizes a trustee to use the kind of funds that the Trustee seeks here to recover in connection with the performance of his duties." *Id.* at 19. These holdings by this Court on this issue constitute the law of this bankruptcy case.

Notwithstanding, those holdings, Dahiya now, for the first time, in the instant Motion, makes the erroneous contention on Defendant's behalf that such proceeds are not property of the estate.

As will be discussed herein, not only is Defendant's contention barred by the law of the case doctrine, but also by the pertinent case law, which clearly demonstrates that the profits, in the form of the post-petition sale proceeds derived from the estate's 100% ownership interest in ENSI, constitute property of the Debtors' bankruptcy estate. Accordingly, Defendant's Motion to dismiss should be denied in its entirety.

## FACTUAL BACKGROUND

As set forth in the Trustee's Complaint in this adversary proceeding (a copy of which Complaint is annexed hereto as **Exhibit 2**), Schedule B to the Debtors' petition sets forth that as of the petition dateof April 24, 2012 (the "**Petition Date**"), the Debtor Brizinova held a 100% ownership interest in ENSI (Complaint, ¶9). The foregoing fact was also noted in this Court's Memo Decision at page 2: "On Schedule B, the Defendants [the Debtors] indicate that as of the petition date, Ms. Brizinova held one hundred percent of the stock of ENSI." Accordingly, upon the filing of the Debtors' petition, the Debtor Brizinova's 100% ownership interest in ENSI became the property of the Debtors' bankruptcy estate.

The Trustee commenced the Debtors Adversary based upon, among other things, documentary evidence indicating that ENSI's sales of auto parts over the internet had continued

well after the Petition Date, evidence that belied the Debtors' contentions in their respective Bankruptcy Rule 2004 exams that ENSI had stopped operating prior to the Petition Date.

During the course of discovery in the Debtors Adversary, the Trustee and his professionals obtained significant documentation and information from two subpoenaed non-parties, eBay and PayPal, as well as additional internet information, which not only further undermined the Debtors' assertions that ENSI had ceased doing business pre-Petition Date, but implicated the Debtors' daughter-in-law, the Defendant Zlata Soshkin, in the family's covert scheme to hide from the Trustee the post-Petition Date continuation of ENSI's business operations and the conversion of estate assets, namely, the proceeds and profits from the post-Petition Date ENSI auto part sales.

Specifically, as alleged in paragraph 12 of the Trustee's Complaint in this adversary proceeding, such documentation and information implicating Defendant Zlata Soshkin included the following:

- Notwithstanding that as of the Petition Date, Brizinova's 100% interest in ENSI became property of the Debtors' bankruptcy estate, and without any authorization from the Trustee whatsoever, ENSI continued to sell auto parts subsequent to the Petition Date for a period in excess of three (3) years, commencing on the Petition Date of April 24, 2012 and ending no earlier than July 18, 2015.

- Said unauthorized post-Petition Date ENSI sales of auto parts, which generated sale proceeds of at least $42,431.66, all of which proceeds constitute property of the Debtors' estate, were effectuated via eBay using the same user identification account, "buydashtrims," used by ENSI pre-petition to effectuate sales of auto parts via eBay.

- Said eBay user identification account, "buydashtims," at all relevant times herein, was and is registered to Zlata Polukhina, which upon information and belief is Defendant's maiden name, and the registration indicates her address as 288 Timber Ridge Drive, Staten Island, New York 10306, the aforementioned address where, upon information and belief, at all relevant times, Defendant has resided, and presently resides, with her husband, Nick Soshkin, the Debtors' son.

- Purchasers of the aforesaid post-Petition Date sales of ENSI auto parts effectuated via eBay made their payments to a PayPal account registered in Defendant's maiden name, Zlata Polukhina, and said registration, like the eBay registration, indicates her address as 288 Timber Ridge Drive, Staten Island, New York 10306.

- The sale proceeds derived from ENSI's aforesaid post-Petition Date sales (the **"Post-Petition Sale Proceeds"**) were deposited into said PayPal account registered to Defendant, and additional records produced by PayPal evidence the use of certain monies from that PayPal account for Defendant's own personal purchases and/or use and for purchases made by and/or on behalf Defendant's husband Nick Soshkin and the Debtors' other son (Defendant's brother-in-law) Igor Soshkin.

- Moreover, said PayPal account has been linked to checking accounts at both JPMorgan Chase and TD Bank in Defendant's maiden name, Zlata Polukhina.

Based upon the foregoing, the Trustee filed his Complaint in the instant adversary proceeding, asserting turnover, conversion and bankruptcy stay violation claims against Defendant Zlata Soshkin f/k/a Zlata Polukhina substantially similar, if not virtually identical, to the ones asserted by the Trustee in the Debtors Adversary.

## ARGUMENT

### I. The Applicable Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. . . ." *In re Fairway Group Holding Corp. Securities Litigation*, No. 14 Civ. 0950 (LAK)(AJP), 2015 WL 249508, at *3 (S.D.N.Y. Jan. 20, 2015) (emphasis in original omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007)). Thus, "[w]hen there are well-pleaded factual allegations, a court

should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* The "Court's role in deciding a motion to dismiss 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Id.* at *4.

This Court agreed in the Memo Decision at 15: "When considering a motion to dismiss under Rule 12(b)(6), the court should accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff. *DiFolco v MSNBC Cable, L.L.C.*, 622 F.3d 104, 110-11 (2d Cir. 2010) (citations omitted); *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1174 (2d Cir. 1993)."

As will be discussed further below, the Trustee's Complaint more than adequately satisfies the pleading requirements set forth in the above-cited cases.

II. **Pursuant to Both the Law of the Case Doctrine and Applicable Statutory and Case Law, the Trustee Has Sufficiently Alleged That the Post-Petition Sale Proceeds Are Property of the Debtors' Estate and, Thus, Should be Turned Over to the Trustee**

　　A. **The Law of the Case Doctrine is Applicable Here as Relates to the Motion to Dismiss**

As stated by the United States Court of Appeals for the Second Circuit in *Pescatore v. Pan American World Airways, Inc.*, 97 F.3d 1, 7-8 (2d Cir. 1996):

> The law of the case doctrine "'posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" *DiLaura v. Power Auth.*, 982 F.2d 73, 76 (2d Cir. 1992) (quoting *In re PCH Assocs.*, 949 F.2d 585, 592 (2d. Cir. 1991)).

The law of the case doctrine is applicable in the context, as exists in this bankruptcy case, of separate adversary proceedings in the same bankruptcy case. As stated by Judge Alan S. Trust of this Court in his recent decision in *In re Moise*, 575 B.R. 191 (Bankr. E.D. N.Y. 2017):

> The law of the case doctrine applies to different adversary proceedings filed within the same main bankruptcy case. *See e.g., Cohen v. Bucci*, 905F.2d 1111, 1112 (7th

Cir. 1990) (stating that "[a]dversary proceedings in bankruptcy are not distinct pieces of litigation; they are components of a single bankruptcy case").

Thus, the law of the case was applied by the bankruptcy court in *In re Bishop*, 578 B.R. 158, 166 (Bankr. W.D. N.Y. 2017) with respect to certain issues arising in an adversary proceeding brought by the United States Trustee, where those issues already had been decided by the court regarding a motion brought by the United States Trustee in the same bankruptcy case, and where the relief sought in the adversary proceeding arose out of the same set of facts, and under the same statute, as had been involved in the prior motion. *See also, In re Belmonte*, 524 B.R. 17, 26 (Bankr. E.D. N.Y. 2015).

The Post-Petition Sale Proceeds which are the subject of the Trustee's allegations and claims in the instant adversary proceeding are the same estate assets involved in the Debtors Adversary. They represent proceeds and profits from the same entity, ENSI, as to which the Debtors' estate holds the 100% ownership interest, and the claims asserted against Defendant herein for turnover and conversion of the Post-Petition Sale Proceeds and violations of the bankruptcy stay in connection therewith are the same, and involve the same statutes, as those asserted by the Trustee in the Debtors Adversary. Accordingly, this Court's above-mentioned rulings in denying the Debtors' motion to dismiss most of the claims in the Debtors Adversary (where the Debtors, like the Defendant here, are represented by Dahiya), constitute the law of this bankruptcy case, and negate Defendant's contention in the instant adversary proceeding that the Trustee has failed to assert a cognizable claim with respect to any assets of the estate.

## B. The Code and the Case Law are Clear that The Post-Petition Sale Proceeds Are Property of the Estate

Moreover, the pertinent provisions of Section 541 of the Bankruptcy Code, and the pertinent case law applying those provisions, make clear that the Post-Petition Sale Proceeds involved in the instant adversary proceeding, as is true with respect to the Debtors Adversary, are proceeds and profits derived from the estate's 100% interest in ENSI and thus constitute property of the Debtors' estate.

Section 541(a) of the Bankruptcy Code states in relevant part that a debtor's bankruptcy estate "is comprised of all the following property, **wherever located and by whomever held**:

> …(6) **Proceeds**, product, offspring, rents or **profits** of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case [emphasis added]."

In *In re Neuman*, 75 B.R. 966, 968-969 (Bankr. S.D.N.Y. 1987) (where revenues from operation of company owned by debtor were, along with ownership in the company, property of the estate), the court stated:

> The definition of property of the estate is broad and includes all legal and equitable interests of the debtor in property as of the commencement of the case, see Code §541(a)(1), as well as the proceeds, product, rents or profits of or from property of the estate…see Code §541(a)(6).

Similarly, in *In re Cook*, 454 B.R. 204, 208 (Bankr. N.D. Fla. 2011), where the so-called bonuses were in the nature of dividends on stock owned by debtor's estate and thus dividends were assets of the estate, the court stated:

> …§541 of the Bankruptcy Code "is intended to include in [the] Debtor's estate almost any asset or interest of value Debtor has" [citation omitted]… Moreover, §541 is so broad that if any asset or interest of the Debtor's estate produces proceeds or profits, then those proceeds and profits are also property of the estate. 11 U.S.C. §541(a)(6).

In accordance with this broad scope of Section 541, courts have held that proceeds, profits and other distributions flowing from an entity in which the estate holds the ownership

interest comprise assets of the debtor's estate as well. *See e.g., In re Altchek,* 124 B.R. 944 (Bankr. S.D.N.Y. 1991) (earnings from estate's interest in a partnership owned by debtor as sole proprietor held to be property of the estate); *In re Armstrong,* 73 B.R. 143 (Bankr. N.D. Texas 1987) (commission paid to corporation owned by debtor could only be characterized as a distribution of profits from company and therefore constituted property of the estate).

Contrary to the Debtors' sworn testimony in this case, ENSI, of which the estate became the 100% owner as of the Petition Date, was still operating subsequent to the Petition Date, and the proceeds and profits derived from ENSI in the form of the Post-Petition Sale Proceeds also constituted – and still do constitute -- assets of the Debtors' estate to which the Trustee is entitled pursuant to Section 541(a)(6) of the Bankruptcy Code. Defendant's specious assertions that they are not estate assets fly in the face of that statutory provision and of the case law interpreting and applying same, and thus militate in favor of the denial of Defendant's motion.

### C. The Code, the Case Law and This Court's Memo Decision are Clear That the Trustee Has Adequately Alleged a Turnover Claim

In the Memo Decision at 15-16, this Court noted that the Trustee had to allege the following three elements to state a legally adequate claim against the Debtors for turnover of Post-Petition Sale Proceeds pursuant to Section 542 of the Bankruptcy Code:

> (1) the property is in the possession, custody or control of another entity; (2) the property can be used in accordance with the provisions of section 363; and (3) the property has more than inconsequential value to the debtor's estate [citations omitted].

The Court proceeded to hold that the Trustee's allegations in his complaint against the Debtors sufficiently set forth those required elements and therefore denied the Debtors' motion to dismiss the Trustee's turnover claim. See Memo Decision at 15-20.

The pertinent allegations in the Trustee's complaint against the Debtors (a copy of which is annexed hereto as Exhibit 3; see ¶¶11-13 and 15-17 thereof), which allegations this Court deemed to state a cognizable turnover claim, are substantially similar, and in fact in most instances virtually identical, to those alleged in this Complaint against Defendant in support of his turnover claim herein (see Exhibit 2, ¶¶11-13 and 15-18). Clearly then, applying both the law of the case doctrine and other pertinent case law, the Trustee has set forth a legally sufficient claim against Defendant for turnover of Post-Petition Sale Proceeds under Section 542 of the Bankruptcy Code.

### D. This Court's Memo Decision Makes it Clear the Entirety of the Trustee's Conversion Claim is Adequately Pled

In its Memo Decision at 29, this Court set forth and ruled that the four elements that needed to be alleged for conversion of estate property under New York common law were all satisfied by the Trustee as follows:

> (1) The plaintiff had title to the property in question or had a right to its possession; (2) the defendant converted a specifically identified property; (3) the defendant exercised unauthorized dominion over the identified property; and (4) the plaintiff was damaged by reason of the alleged conversion [citations omitted].

See Memo Decision at 29-37.

The pertinent allegations as to conversion contained in the Trustee's complaint against the Debtors (see Exhibit 3, ¶¶9-13 and 23-24) are substantially similar to those alleged with respect to the conversion of the 100% interest in ENSI set forth in the Trustee's Complaint in this proceeding against Defendant (see Exhibit 2, ¶¶9-13 and 20-22). Thus, applying both the law of the case doctrine and other pertinent case law, the Trustee has set forth a legally sufficient claim against Defendant for conversion of the estate's aforesaid interest in ENSI.

Unlike the portion of the Trustee's claim against the Debtors alleging conversion of Post-Petition Sale Proceeds, respecting which this Court indicated that the Trustee had not alleged "specifically identified property" (see Memo Decision at 34 and 37), here, in paragraph 12 of this Complaint,[2] the Trustee's does identify specific property, namely at least $42,431.66 of Post-Petition Sale Proceeds, derived from sales of ENSI through the eBay account registered to, and converted by, Defendant, who deposited said sale proceeds into a PayPal account also registered to Defendant, and linked to Defendant's checking accounts at specifically identified banks.

Accordingly, the Trustee respectfully submits that consistent with this Court's Memo Decision these very detailed allegations are more than satisfied by the Trustee who has set forth a legally cognizable claim with respect to Defendant's claimed conversion of Post-Petition Sale Proceeds.

Nevertheless, the Defendant argues that Section 214(3) of the New York Civil Practice Law and Rules governing conversion claims precludes in its entirety the Trustee's conversion claim in this adversary proceeding. That argument fails for two reasons:

The Trustee did not discover Defendant's conversion of estate assets until, in the course of non-party discovery in the Debtors Adversary, the Trustee obtained: (a) from eBay on or about July 25, 2017 documentation evidencing that – contrary to the Debtors' and their family members' prior sworn testimony, in multiple instances, that ENSI had stopped operating prior to

---

[2] Paragraph 12 of the Trustee's Complaint against Defendant is quoted in full in the penultimate paragraph of the Factual Background section of this brief, at pages 4-5.

the Petition Date[3] – in fact, sales of ENSI auto parts were effectuated by Defendant via eBay for a period of more than three (3) years subsequent to the Petition Date, ending no earlier than July 18, 2015; and (b) from PayPal on or about September 17, 2017 documents showing that payments for said sales were made through a PayPal account registered to Defendant which in turn was linked to Defendant's checking accounts.

Given the repeated cover-up by the Debtors and their family members, including Defendant, as to the foregoing, and that as a consequence thereof, the Trustee could not discover any of these facts until starting on or about July 25, 2017, Defendant should be precluded from asserting a statute of limitation defense as to any portion of the Trustee's conversion claim.

But even assuming *arguendo* that this Court were to apply the three-year statute of limitations to the Trustee's conversion claim, the aforementioned eBay records show that the eBay sales lasted through at least July 18, 2015 (see Complaint, Exhibit 2 at ¶12). The instant adversary proceeding was filed on November 9, 2017. Therefore, at the very least, the Trustee's conversion claim would encompass Post-Petition Sale Proceeds received and converted by the Debtor commencing November 9, 2014, and future discovery in this proceeding may show more sales of ENSI auto parts effectuated by Defendant through other internet vehicles and other means that resulted in additional Post-Petition Sale Proceeds on or after November 9, 2014.

---

[3] The sworn testimony to this effect was given by both Debtors at their respective Bankruptcy Rule 2004 exams, and at the depositions of the Debtor Soshkin and of the Debtors' two sons, Igor Soshkin and Nick Soshkin (Defendant's husband). In addition, in their motion to dismiss the Debtors Adversary, the defendant Debtors, by their counsel Dahiya, asserted that "ENSI ceased to operate in March 2012 and had no activity after the petition." See Document No. 8 on this Court's electronic docket for Adv. Proc. No. 15-01073 (ESS) at page 3.

### E. The Trustee Has Adequately Alleged Defendant's Violations of the Automatic Bankruptcy Stay

In ruling on the sufficiency of the Trustee's claim in the Debtors Adversary that the Debtors' alleged conduct constituted breaches of the automatic stay under Section 362(a) of the Bankruptcy Code, this Court set forth in its Memo Decision at 23 the three required elements of such a claim:

> These are first, that the automatic stay was in effect at the time of the alleged violation; second, that the property at issue was property of the estate; and third, that the conduct in question constitutes a violation of the automatic stay.

This Court went on to find that the Trustee's pertinent allegations in his complaint against the Debtors adequately set forth a viable claim for willful violation of the automatic stay under Section 362(a) for which he could seek relief under Section 362(k) of the Bankruptcy Code. See Memo Decision at 22-29. The allegations in the Trustee's Complaint against Defendant in support of his claim that Defendant willfully violated the automatic stay (see Exhibit 2, ¶¶24-27) are substantially similar to those contained in the Trustee's complaint against the Debtors with respect to their alleged violations of the stay (see Exhibit 3, ¶¶19-21). Accordingly, pursuant to this Court's ruling that said allegations were sufficient to state a claim in the Debtors' Adversary, and pursuant to the law of the case doctrine, Defendant's request for dismissal of the similar claim in this adversary proceeding likewise must be denied.

### III. This Court Has Jurisdiction Over This Adversary Proceeding

As an obviously last resort argument, Defendant contends that this Court lacks jurisdiction over the Trustee's claims in this adversary proceeding. Once again, both the law of the case doctrine and applicable statutory law underscore the meritless nature of Defendant's argument.

In this Court's Memo Decision at 2, this Court explicitly held that it had jurisdiction over the Trustee's claims for turnover, conversion and violation of the automatic stay asserted in the Debtors Adversary:

> This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1334(b) and 157(b)(1). This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(E). And as a core matter, this Court has constitutional authority to enter a final judgment, because the Trustee's claims stem "from the bankruptcy itself." *Stern v. Marshall*, 564 U.S. 462, 499 (2011). For these reasons, this court has jurisdiction and the authority to consider and enter judgment on these claims under 28 U.S.C. § 1334(b) and the Standing Order of Reference dated August 28, 1986, as amended by Order dated December 5, 2012, of the United States District Court for the Eastern District of New York.

Like the Trustee's claims in the Debtors Adversary, his claims in the instant proceeding are for turnover, conversion and violations of the automatic stay with respect to the estate's 100% interest in ENSI and in Post-Petition Sale Proceeds emanating therefrom. Therefore, pursuant to this Court's above-quoted holding in the Debtors Adversary on the jurisdictional issue, and to the law of the case doctrine, this Court has jurisdiction over each of the Trustee's claims in the Complaint in this adversary proceeding.

Furthermore, Defendant's jurisdictional argument is founded upon the assertion that the estate's 100% interest in ENSI and in the Post-Petition Sale Proceeds are not assets of the estate, a clearly erroneous assertion, as set forth in Point II, *supra*. Moreover, that state law may determine what constitutes property of the Debtors' estate does not negate in any way that the Trustee's claims against Defendant for turnover of the subject assets under Section 542(a) of the Bankruptcy Code, for conversion of those assets, and for violations of the bankruptcy stay imposed by Section 362(a) of the Bankruptcy Code, are core proceedings "arising under title 11"

of the United States Code. *See*, 28 U.S.C. § 157(b)(1) and (b)(2)(E); Memo Decision at 2.[4]

In short, that aspect of Defendant's motion which seeks dismissal of this adversary proceeding for lack of jurisdiction is devoid of merit and should be denied.

## CONCLUSION

For all of the reasons set forth above, the Trustee respectfully requests that this Court deny Defendant's motion to dismiss in its entirety.

Dated: New York, New York
February 15, 2018

                                                **TARTER KRINSKY & DROGIN LLP**
                                                *Substitute Special Litigation*
                                                *Counsel to the Chapter 7 Trustee*

                                      By: */s/ Robert A. Wolf*
                                                Robert A. Wolf, Esq.
                                                1350 Broadway, 11th Floor
                                                New York, New York 10018
                                                Tel: 212.216.8000
                                                rwolf@tarterkrinsky.com

---

[4] The case of *Dynamic Drywall, Inc. v. McPherson Contractors, Inc.*, 2015 WL 4744501 (D. Kansas, August 11, 2015) cited by Defendant is entirely inapposite to the instant proceeding. In that case, the debtor brought an adversary proceeding for breach of contract and related conversion of equipment that the court deemed to be purely non-core state law claims. But even with the latter finding, the federal district court merely granted the defendants' motion to withdraw the reference to the bankruptcy court, so that the federal district court would exercise jurisdiction over and conduct a jury trial of the debtor's claims.