UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x

In re:                                                                    Chapter 7

ESTELLA BRIZINOVA and                                  Case No. 12-42935-ess
EDWARD SOSHKIN,
*aka* EDUARD SOSHKIN,


                       Debtors.
---------------------------------------------------------------x
ROBERT L. GELTZER, CHAPTER 7                      Adv. Pro. No. 17-01157-ess
TRUSTEE OF THE ESTATE OF ESTELLA
BRIZINOVA AND EDWARD SOSHKIN,


                       Plaintiff,


          -against-


ZLATA SOSHKIN, *aka* ZLATA POLUKHINA,


                       Defendant.
---------------------------------------------------------------x


## MEMORANDUM DECISION
## ON MOTION TO DISMISS ADVERSARY PROCEEDING


Appearances:

Robert A. Wolf, Esq.                              Karamvir Dahiya, Esq.
Tarter Krinsky & Drogin LLP                 Dahiya Law Offices, LLC
1350 Broadway (11th floor)                   75 Maiden Lane (Suite 506)
New York, NY 10018                            New York, NY 10038
  *Attorneys for Robert L. Geltzer, as*        *Attorneys for Estella Brizinova and*
  *Chapter 7 Trustee of the Estate of*          *Edward Soshkin*
  *Estella Brizinova and Edward Soshkin*

**HONORABLE ELIZABETH S. STONG**
**UNITED STATES BANKRUPTCY JUDGE**

### Introduction

Robert L. Geltzer, the Chapter 7 Trustee of the Estate of Estella Brizinova and Edward

Soshkin, *aka* Eduard Soshkin (together, the "Debtors"), commenced this adversary proceeding

by filing a complaint (the "Complaint") against defendant Zlata Soshkin, aka Zlata Polukhina.

Ms. Soshkin is the Debtors' daughter-in-law, and is married to the Debtors' son Nick Soshkin.

The Trustee seeks to recover alleged estate property that, he asserts, the Defendant has

improperly refused to turn over, in violation of Bankruptcy Code Section 542.  The Trustee also

seeks an award of compensatory and punitive damages based on a theory of common law

conversion.  And the Trustee seeks declaratory relief, injunctive relief, and compensatory and

punitive damages pursuant to Bankruptcy Code Sections 362(a) and 362(k), based on Ms.

Soshkin's alleged transfer of estate property in violation of the automatic stay.  This is the

second time that the Trustee has sought to recover the property at issue, although it is the first

time that he has sought such a recovery from Ms. Soshkin.

The Trustee alleges that pursuant to Section 542, Ms. Soshkin is required to turn over

post-petition sale proceeds in the amount of at least $42,431.66 (the "Post-Petition Sale

Proceeds"), from ENSI Consulting, Inc. ("ENSI"), an auto supply parts company listed by the

Debtors on Schedule B - Personal Property as owned one hundred percent by Debtor Brizinova.

The Trustee also alleges that Ms. Soshkin willfully and knowingly converted estate property,

namely the estate's one hundred percent interest in ENSI and the Post-Petition Sale Proceeds,

damaging the estate in the amount of at least $42,431.66, and seeks an award of punitive

damages in an amount to be determined by this Court.  And the Trustee alleges that the estate is

entitled to recover damages in the amount of at least $42,431.66, under Bankruptcy Code

Sections 362(a)(3) and 362(k), for violations of the automatic stay arising from Ms. Soshkin effectuating post-petition sales of ENSI auto parts, depositing the proceeds into her PayPal account, and using certain of the Post-Petition Sale Proceeds for her own, her husband's, and her brother-in-law Igor Soshkin's purchases.

Ms. Soshkin seeks the dismissal of this action pursuant to Federal Rule of Civil Procedure 12(b)(6), made applicable here by Federal Rule of Bankruptcy Procedure 7012(b), on grounds of "lack of cause of action," that this Court lacks jurisdiction to hear this proceeding, that the statute of limitations has expired, and pursuant to the common law doctrine of laches. Mot. to Dismiss at 19, ECF No. 5. Ms. Soshkin also invites the Court to revisit its decision in *Robert L. Geltzer, Chapter 7 Trustee v. Estella Brizinova and Edward Soshkin (In re Brizinova)*, 554 B.R. 64 (Bankr. E.D.N.Y. 2016), which upheld in part the Trustee's similar claims to recover the Post-Petition Sale Proceeds from the Debtors, and to "correct its prior ruling in [the] other matter," with respect to the Post-Petition Sale Proceeds and property of the estate. Reply at 9, ECF No. 11.

The questions posed by this motion are whether in this action, the Trustee adequately pleads claims for turnover of property of the estate, conversion of estate property, and violations of the automatic stay, as well as for actual and punitive damages and injunctive relief. For the reasons set forth below, Ms. Soshkin's motion to dismiss is granted and leave to replead is allowed.

## **Jurisdiction**

This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1334(b) and 157(b)(1). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(E). And as a core matter, this Court has constitutional authority to enter a final judgment, because the Trustee's claims

stem "from the bankruptcy itself." *Stern v. Marshall*, 564 U.S. 462, 499 (2011). For these reasons, this Court has jurisdiction and the authority to consider and enter judgment on these claims under 28 U.S.C. § 1334(b) and the Standing Order of Reference dated August 28, 1986, as amended by Order dated December 5, 2012, of the United States District Court for the Eastern District of New York.

## **Background**

Selected Procedural History

The Debtors are husband and wife who filed this joint bankruptcy petition on April 24, 2012. The Trustee was appointed on that date. On Schedule B, the Debtors indicate that as of the petition date, Debtor Brizinova owned one hundred percent of the stock of ENSI, a New York corporation. According to Schedule B, the value of Debtor Brizinova's interest in the ENSI shares as of the petition date was zero.

On October 4, 2012, the Court entered an order pursuant to Bankruptcy Rule 2004 directing the Debtors to produce certain documents "as owners of NC Consulting, Inc., as well as any other businesses in which they have an ownership interest," for a period of six years before the petition date, and to appear for an examination by the Trustee. Order Auth. Rule 2004 Exam, at 1, Case No. 12-42935, ECF No. 25. The Trustee alleges that the Debtors each testified at their Rule 2004 examinations, and Debtor Edward Soshkin testified at his deposition, that the business of ENSI was the sale of auto parts through the internet and eBay.

On March 13, 2014, the Trustee commenced an adversary proceeding against Nick Soshkin and Igor Soshkin, the Debtors' sons, seeking to recover allegedly fraudulent transfers by the Debtors to their sons of certain interests in real and personal property located in Florida. The

parties resolved the Trustee's claims by entering into a stipulation of settlement, which was approved by this Court on December 12, 2014.

On June 23, 2015, the Trustee commenced an adversary proceeding against the Debtors (the "Brizinova Adversary"), seeking turnover of property of the estate, declaratory and related relief, including compensatory and punitive damages for their knowing and willful violation of the automatic stay, and compensatory and punitive damages based on the Debtors' knowing and willful conversion of property of the estate.  Compl., Adv. Pro. No. 15-01073, ECF No. 1.  The Debtors moved to dismiss that complaint, and on July 20, 2016, this Court entered an order denying in part and granting in part the Debtors' motion to dismiss.  There, the Court concluded that with respect to the Trustee's claims for turnover of post-petition sale proceeds pursuant to Section 542(a), stay relief pursuant to Section 362(a), and conversion of Debtor Brizinova's ownership interest in ENSI, the Trustee had adequately alleged those claims, and denied the motion to dismiss.  But with respect to the Trustee's claim for conversion of the sale proceeds attributable to Debtor Brizinova's ownership interest in ENSI, the Court granted the motion to dismiss, and allowed leave to replead that claim.  The Trustee did not replead his conversion claim, and that adversary proceeding is still pending.[1]

On November 9, 2017, the Trustee commenced this adversary proceeding against Ms. Soshkin.  On April 2, 2018, the Court heard argument on the Motion to Dismiss, at which the Trustee and Ms. Soshkin, each by counsel, appeared and were heard, and reserved decision.

*The Allegations of the Complaint*

---

[1]  Ms. Soshkin invites the Court to revisit its determination of the Motion to Dismiss in that action.  Though that adversary proceeding and this one arise in connection with the same Chapter 7 bankruptcy case, they are different actions, against different parties, and Ms. Soshkin has advanced different arguments here than were made by the Defendants in the Brizinova Adversary.  For these reasons, among others, the Court declines Ms. Soshkin's invitation.

Here, as in the Brizinova Adversary, the Trustee alleges that as of the petition date, Debtor Briznova held a one hundred percent ownership interest in ENSI, and that upon the filing of the petition that interest became an asset of the estate.

In addition, the Trustee alleges that based on documents produced by eBay and PayPal during discovery, "and additional information and documents obtained from the internet," ENSI continued to sell auto parts post-petition beginning on the petition date of April 24, 2012, and ending no earlier than July 18, 2015.  Compl. ¶ 12, ECF No. 1.  The Trustee alleges that an eBay user identification account, "buydashtrims," was "used by ENSI pre-petition to effectuate sales of auto parts via eBay," and that "'buydashtrims' . . . was and is registered to Zlata Polukhina," which is Ms. Soshkin's maiden name, and that the registration indicates her address as 288 Timber Ridge Drive, Staten Island, NY 10306, where she and Nick Soshkin reside.  Compl. ¶ 12.

The Trustee asserts that post-petition, purchasers from "buydashtrims" made their payments to a PayPal account registered in Ms. Soshkin's name and address.  He alleges that additional records produced by PayPal show that Ms. Soshkin used some of the funds from that PayPal account for personal purchases.  The Trustee linked the PayPal account to bank accounts at JPMorgan Chase and TD Bank in the name of Zlata Polukhina.

The Trustee alleges that "unauthorized" ENSI sales during this time generated the Post-Petition Sale Proceeds of approximately $42,431.66, which are property of the Debtors' estate and must be turned over to him.  And the Trustee alleges that notwithstanding his repeated demands, Ms. Soshkin has not turned over the Post-Petition Sale Proceeds.

In his First Claim for Relief, seeking turnover pursuant to Section 542, the Trustee alleges that the Post-Petition Sale Proceeds are estate property in Ms. Soshkin's possession, custody and/or control, and that notwithstanding demand, Ms. Soshkin has failed to turn over the

Post-Petition Sale Proceeds of at least $42,431.66, plus interest. The Trustee seeks an order directing Ms. Soshkin to turn over to him the Post-Petition Sale Proceeds.

In his Second Claim for Relief, for conversion of estate property, the Trustee alleges that Ms. Soshkin willfully, knowingly, and wrongly converted property of the estate in the form of the Post-Petition Sale Proceeds. The Trustee seeks an order awarding damages in the amount of at least $42,431.66, plus interest, and punitive damages in an amount to be determined by the Court.

In his Third Claim for Relief, for violations of the automatic stay pursuant to Section 362(a) and (k), the Trustee alleges that despite her knowledge of the Debtors' bankruptcy filing, and that the Trustee had become the owner of their interest in ENSI, Ms. Soshkin made post-petition sales of ENSI auto parts on eBay, deposited those proceeds into her PayPal account, and used certain of the Post-Petition Sale Proceeds for her personal expenses. The Trustee seeks a declaratory judgment that Ms. Soshkin violated the automatic stay, an order enforcing the stay and enjoining Ms. Soshkin from making further transfers of the Post-Petition Sale Proceeds, damages of at least $42,431.66, plus interest, and punitive damages.

*This Motion to Dismiss*

On December 14, 2017, Ms. Soshkin filed a motion to dismiss the Complaint, and a memorandum of law in support of the motion (the "Def's Mem."). She makes several arguments in support of her request that the Complaint be dismissed.

Ms. Soshkin seeks to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), on grounds that it fails to state a claim, is untimely and barred by laches, and that this Court lacks jurisdiction to hear it. Ms. Soshkin argues that the Complaint does not satisfy the pleading standards established by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S.

544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  She asserts that the Complaint is neither

"factually plausible" nor "legally viable," and that Debtor Brizinova's ownership interest in

ENSI, and thus the Trustee's, "does not create property of the estate in the assets of ENSI."  Mot.

to Dismiss at 6, ECF No. 5.  That is, she argues, the Trustee's ownership interest in ENSI is

property of the estate, but the assets of ENSI, a non-debtor entity, are not.

More specifically, as to the First Claim for Relief, seeking turnover, Ms. Soshkin argues

that since there is no estate property here, the claim for turnover of estate property fails.  She

argues that while the Trustee may sell the Debtors' shares in ENSI, he may not sell the corporate

assets of ENSI, and for these reasons, he is not entitled to turnover of the Post-Petition Sale

Proceeds.

As to the Second Claim for Relief, for conversion, Ms. Soshkin states that since there was

never any estate property to be the subject of the conversion claim, there can be no conversion.

And because the estate does not have a possessory right in the assets of ENSI, Ms. Soshkin could

not have exercised dominion over that property or interfered with it in derogation of the

Trustee's rights.

Ms. Soshkin also notes that here, the Trustee seeks to apply the law of the case doctrine

to different parties, and a different case, and where there has been no controversy determined by

the Court, only a ruling on a motion to dismiss.  Ms. Soshkin asserts that the law of the case

doctrine does not apply beyond the parties to the case in which the ruling was rendered, and that

to apply law of the case here would deprive her of due process.  She argues that the issues

addressed in the Brizinova Adversary differ from the issue raised here – whether the Post-

Petition Sale Proceeds are property of the estate.  Ms. Soshkin states that this Court "previously

proceeded under the impression that the property [was] property of the estate," and suggests that

this is incorrect, is dicta, and is not controlling.  Reply at 15.  And she argues that in all events, this claim is barred by the three-year statute of limitations for conversion, because although the Trustee alleges that the conversion began in 2012, he did not commence this action until 2017, more than three years after he discovered the alleged conversion.  She also argues that the doctrine of equitable tolling does not apply because the Trustee has not "established" that any fraudulent conduct concealed the cause of action during the period that the Trustee seeks to have tolled.  Reply at 18.

With respect to the Third Claim for Relief, for stay violations, Ms. Soshkin states that there was no stay in place with respect to ENSI, a non-debtor, and so selling ENSI assets did not violate the automatic stay.  And she argues that because no acts were taken with respect to property of the estate, the estate has not been damaged.

*The Trustee's Opposition*

The Trustee opposes the Motion to Dismiss.  He responds that the Post-Petition Sale Proceeds at issue here are the same estate assets that are the subject of the Brizinova Adversary. He further responds that the Complaint states claims that are substantially similar to those asserted in the Brizinova Adversary, and that much of that complaint survived a motion to dismiss, as set forth in the Court's memorandum decision (the "Brizinova Decision").

The Trustee also responds that Ms. Soshkin is barred by the law of the case doctrine from arguing that the Post-Petition Sale Proceeds are not property of the estate.  He argues that in the Brizinova Adversary, "Dahiya did not argue in the dismissal motion . . . that the [Post-Petition Sale Proceeds] were not property of the bankruptcy estate," and that this Court held that the Trustee had adequately alleged that the Post-Petition Sale Proceeds were property of the estate. Opp. Mem. at 2, ECF No. 8.  That is, he points out that in the Brizinova Adversary, the

defendants did not make that argument even though they were represented by the same counsel, and there, the Court sustained similar claims.

With respect to his turnover claim under Bankruptcy Code Section 542, the Trustee responds that the Complaint states a claim for turnover against Ms. Soshkin that is plausible on its face, because the allegations set forth the elements of that claim, and are "in most instances virtually identical" to the allegations of the turnover claim that was sustained in the Brizinova Adversary. Opp. Mem. at 9-10.

Addressing the adequacy of his conversion claim, the Trustee responds that here again, the allegations of the Complaint are "substantially similar to those alleged" in the Brizinova Adversary, with respect to the conversion of the one hundred percent interest of ENSI. Opp. Mem. at 10. And under both the law of the case doctrine and applicable case law, the Trustee contends that he adequately pleads this claim.

With respect to the laches and statute of limitations issues, the Trustee asserts, among other things, that he did not discover, and could not have discovered, Ms. Soshkin's conversion of estate assets until July 25, 2017. For this reason alone, he asserts, Ms. Soshkin should be precluded from asserting a laches defense to the conversion claim. Alternatively, the Trustee responds that even if the Court applies the three-year limitations period to the conversion claim, it should encompass "at the very least" Post-Petition Sale Proceeds for the three-year period from November 9, 2014, to November 9, 2017. Opp. Mem. at 12.

With respect to the allegations of stay violations, the Trustee responds that here as well, the allegations in the Complaint are "substantially similar to those contained in the Trustee's complaint" in the Brizinova Adversary, and the Court has determined that the stay violations claim is adequately pleaded there. Opp. Mem. at 13.

Finally, with respect to the allegations that the Court lacks jurisdiction to hear the Complaint, the Trustee responds that the Court determined that the substantially similar Brizinova Adversary is a core proceeding, and that for the same reasons, the Court has constitutional authority to enter a final judgment here.

## Discussion

## The Law of the Case

At the outset, the Court considers the Trustee's argument that, based on the Brizinova Decision, and the law of the case doctrine, this Court must conclude that here, the Trustee's claims for turnover and conversion of estate property are adequately pleaded, and that the Motion to Dismiss must be denied.

As the Supreme Court has explained, the law of the case doctrine "generally provides that 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" *Musacchio v. U.S.*, 136 S. Ct. 709, 716 (2016) (quoting *Pepper v. United States*, 562 U.S. 476, 506 (2011)). As the Court also observed, "[t]he doctrine 'expresses the practice of courts generally to refuse to reopen what has been decided,' but it does not 'limit [courts'] power.'" *Musacchio*, 136 S. Ct. at 716 (quoting *Messenger v. Anderson*, 225 U.S. 436, 444 (1912)).

The law of the case doctrine is discretionary in nature, and pragmatic in application. It "is a judicial doctrine that promotes finality and efficiency in the judicial process by encouraging courts to follow their own decisions within any given case." *In re Pilgrim's Pride Corp.*, 442 B.R. 522, 529 (Bankr. N.D. Tex. 2010). And as one authority explains, "the law of the case doctrine expresses the general rule that courts will not reopen issues that have already been decided." 18 J. Moore, J. Lucas & T. Currier, *Moore's Federal Practice - Civil* § 134.21[1]

(2018).  To similar effect, "although a court has the power to revisit its own decisions . . . it should not do so absent extraordinary circumstances showing that the prior decision was clearly wrong and would work a manifest injustice.  These principles must be applied with common sense."  *Id.*

A range of circumstances have been cited by courts seeking to determine whether to apply the law of the case doctrine.  Two considerations stand out as fundamental:  whether there is identity of parties between the prior and subsequent matters; and whether the prior decision is a final one.

As to the question of identity of the parties, courts consistently find that this is necessary for the doctrine to apply.  For example, in *Hosking v. TPG Cap. Mgmt, L.P. (In re Hellas Comm'ns (Luxembourg) II SCA)*, 555 B.R. 323 (Bankr. S.D.N.Y. 2016), the bankruptcy court recognized that "'where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again.'"  *In re Hellas Comm'ns*, 555 B.R. at 342 (quoting *Zdanok v. Glidden Co., Durkee Famous Foods Div.*, 327 F.2d 944, 953 (2d Cir. 1964)).  And as one court has explained:

> The "law of the case'' doctrine is that a decision at one stage of a litigation can in the Court's discretion be determined to be binding precedent in following stages of the same litigation or to different lawsuits *between the parties*.  *See In re PCH Associates*, 949 F.2d 585, 592 (2d Cir. 1991).  However, the law of the case doctrine is inapplicable to the instant action.  This is not the same litigation or a different litigation between the same parties.

*Ackerman v. Schultz (In re Schultz)*, 250 B.R. 22, 29 (Bankr. E.D.N.Y. 2000).

As to the question of entry of a final order, the Supreme Court long ago noted that "[w]e think that [the law of the case doctrine] requires a final judgment to sustain the application of the rule . . . just as it does for the kindred rule of res judicata."  *United States v. U.S. Smelting Co.*, 339 U.S. 186, 198-99 (1950)).  For these reasons, courts have declined to apply the doctrine

when the prior order denied a motion to dismiss and "refus[ed] to grant summary judgment."

*GAF Corp. v. Circle Floor Co.*, 329 F. Supp. 823, 826-27 (S.D.N.Y. 1971).  As one court

explained, "the deni[al of a] motion to dismiss . . . by definition is not a final order.  The decision

allowed the case to continue to trial – it was not a final order ending the case."  *Datiz v. Int'l*

*Recovery Assocs.*, 2017 U.S. Dist. LEXIS 2477, at *5 (E.D.N.Y. Jan. 4, 2017).

In a bankruptcy setting, the law of the case doctrine may apply to different adversary

proceedings brought in the same bankruptcy case, provided that all of the requirements of the

doctrine – including identity of the parties – are met.  *See Bourdeau Bros., Inc. v. Montagne (In*

*re Montagne)*, 2010 WL 271347, at *6 (Bankr. D. Vt. Jan. 22, 2010) (stating that '"[a]dversary

proceedings in bankruptcy are not distinct pieces of litigation; they are components of a single

bankruptcy case.'") (quoting *Cohen v. Bucci*, 905 F.2d 1111, 1112 (7th Cir. 1990)); *Artra Grp,*

*Inc. v. Salomon Bros. Holding Co.*, 1996 WL 637595 at *5 (N.D. Ill. Oct. 31, 1996) (holding that

law of the case doctrine encompasses litigation in both main case and adversary proceeding).

*See also In re Terrestar Corp.,* 2017 WL 1040448, at *4 (S.D.N.Y. Mar. 16, 2017) (same);

*Moise v. Ocwen Loan Serv. LLC (In re Moise)*, 575 B.R. 191, 205 (Bankr. E.D.N.Y. 2017)

(same).

Here, it is plain from these considerations that the Brizinova Decision does not supply the

law of the case for this adversary proceeding.  First, identity of parties is lacking, because the

parties to the Brizinova Adversary are the Trustee and the Debtors, Estella Brizinova and

Edward Soshkin, but the parties to this Adversary Proceeding are the Trustee and Ms. Soshkin.

Applying the doctrine to this proceeding would deprive Ms. Soshkin of the most fundamental

component of due process, the opportunity to be heard, because she was not a party to the

Brizinova Adversary.  And the right to an opportunity to be heard is hers, not her counsel's.

12

And second, there is no final judgment, because the Brizinova Decision determined the Debtors' motion to dismiss by granting leave to replead with respect to one claim, and denying it in all other respects.  As previously noted, "the deni[al of a] motion to dismiss . . . by definition is not a final order" because "[t]he decision allowed the case to continue to trial – it was not a final order ending the case."  *Datiz*, 2017 U.S. Dist. LEXIS 2477, at *5.  That is, in the Brizinova Adversary, the Court's decision was not a final order ending the case, and that decision "allowed the case to continue to trial."

For these reasons, neither the Brizinova Decision, nor the law of the case doctrine, requires this Court to conclude that the Motion to Dismiss must be denied.

Pleading Requirements Under Federal Rule of Civil Procedure 8(a)

As this Court has noted, Federal Rule of Civil Procedure 8(a) requires that a pleading contain "'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *In re Brizinova*, 554 B.R. at 74 (quoting Fed. R. Civ. P. 8(a)(2)).  In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court stated that under this rule, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted).

Thereafter, in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court set forth a two-step approach for courts to follow when deciding a motion to dismiss.  First, a court should "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.*  Thus,

13

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Pleading Requirements Under Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) permits a party to seek dismissal of a claim at the pleading stage if it does not state a claim upon which relief may be granted. In *Twombly*, the Supreme Court held that for a complaint to survive a motion to dismiss under Rule 12(b)(6), the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The Court explained that "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted).

When considering a motion to dismiss under Rule 12(b)(6), the court should "'accept[] all factual allegations as true, and draw[] all reasonable inferences in the plaintiff's favor.'" *DiFolco v. MSNBC Cable, L.L.C.*, 622 F.3d 104, 110-11 (2d Cir. 2010) (quoting *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009)); *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1174 (2d Cir. 1993). But a court is not required to accept as true those allegations that amount to no more than legal conclusions. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

In deciding a Rule 12(b)(6) motion, a court may look to the facts alleged in the complaint, and also to those "[d]ocuments that are attached to the complaint or incorporated in it by reference." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007). *See Gillingham v. Geico Direct*, 2008 WL 189671, at *2 (E.D.N.Y. Jan. 18, 2008) (stating that when considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court may look to the complaint, its exhibits, and documents incorporated by reference in the complaint).

<u>Property of the Estate and Proceeds Under the Bankruptcy Code</u>

Bankruptcy Code Section 541(a) provides that the bankruptcy estate consists of "[a]ll legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a). Bankruptcy Code Section 541(a)(6) further states that property of the estate includes the "[p]roceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor." 11 U.S.C. § 541(a)(6).

The definition of property of the estate is interpreted broadly, and "every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach of [Section] 541." *Chartschlaa v. Nationwide Mut. Ins. Co.*, 538 F.3d 116, 122 (2d Cir. 2008) (citation omitted). And "[t]he broad definition of property of the estate clearly encompasses a debtor's interest in another corporation's stock." *In re Arcapita Bank B.S.C.(c)*, 2014 WL 2109931, at *2 (Bankr. S.D.N.Y. May 20, 2014). But the Bankruptcy Code does not define "proceeds," few courts have addressed the question in reported decisions, and some of those that have, define "proceeds" simply by using the term itself.

"Proceeds" of estate property are also property of the estate. As the *Collier* treatise notes, "if the estate sells . . . inventory or other property, the revenue will become property of the estate

as 'proceeds, product, offspring, rent, or profits of or from property of the estate,' as provided under section 541(a)(6)." 5 *Collier on Bankruptcy* ¶ 541.02 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2018). That is, "revenue" from the sale of estate property is also estate property. This makes sense, because the change in an asset's form from one type, such as real estate or shares of a corporation, to another, such as cash, should not lead to a change in whether it is a part of a debtor's bankruptcy estate.

To this effect, courts have found proceeds to include "'whatever is received upon the sale, exchange, collection, or other disposition of collateral or proceeds,'" including a right to payment under a contract entered into before the bankruptcy case was filed. *In re Saxton*, 1988 WL 1571475, at *2 (Bankr. D. Iowa 1988) (quoting Iowa Code § 554.9306(a)). There, the bankruptcy court concluded that payments owed under a contract entered into pre-petition were proceeds because they were received as part of the contract. *In re Saxton*, 1988 WL 1571475, at *2.

Other courts have found proceeds to include:

- residual commissions earned pre-petition but paid post-petition, *see In re Bosack*, 454 B.R. 625 (Bankr. W.D. Pa. 2011);

- proceeds from the post-petition sale of the debtor's real property, *see In re Steel Wheels Transp.*, LLC, 2011 Bankr. LEXIS 4582, 2011 WL 5900958 (Bankr. D.N.J. Oct. 28, 2011);

- stock options not exercisable until post-petition, *see In re Michener*, 342 B.R. 428, 429 (Bankr. D. Del. 2006), and *In re Taronji*, 174 B.R. 964, 967 (Bankr. N.D. Ill. 1994); and

- life insurance policy proceeds where the insured dies after the bankruptcy case is filed, *see In re No. 1 Con-Struct Corp.*, 88 B.R. 452, 453 (Bankr. S.D. Fla. 1988).

*Whether the Trustee States a Claim for Turnover Under Bankruptcy Code Section 542(a)*

16

The Trustee's First Claim for Relief is for turnover of property under Bankruptcy Code Section 542(a). By this claim, the Trustee seeks to recover the Post-Petition Sale Proceeds from Ms. Soshkin. Section 542(a) provides:

> an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

11 U.S.C. § 542(a).

The Trustee must allege three elements to state a claim under Section 542(a). These are: "'(1) the property is in the possession, custody or control of another entity; (2) the property can be used in accordance with the provisions of section 363; and (3) the property has more than inconsequential value to the debtor's estate.'" *Kramer v. Mahia (In re Khan)*, 2014 WL 4956676, at *22 (Bankr. E.D.N.Y. Sept. 30, 2014) (quoting *Zazzali v. Minert (In re DBSI, Inc.*), 468 B.R. 663, 669 (Bankr. D. Del. 2011)). The Court considers each of these elements in turn.

<u>Whether the Trustee Adequately Alleges that the Property Is in the Possession, Custody, or Control of Ms. Soshkin</u>

The first element that the Trustee must allege to state a Section 542(a) claim is that the property at issue is in the possession, custody, or control of another entity.

Ms. Soshkin argues, in substance, that the Trustee does not – and cannot – adequately allege this element of his turnover claim because the property at issue is not property of the estate. She does not dispute the Trustee's allegations that the bankruptcy estate owns a one hundred percent interest in the ENSI shares, and notes that the Trustee may sell the shares of ENSI. But she argues that he may not "reach the assets of a non-debtor corporation." Mot. to Dismiss at 13. And she argues, in substance, that the Post-Petition Sale Proceeds are proceeds

from the sale of ENSI *assets*, rather than proceeds of the ENSI *shares*. And for that reason, she argues, the Post-Petition Sale Proceeds are not property of the estate.

The Trustee responds, among other things, that the Post-Petition Sale Proceeds are in Ms. Soshkin's possession, custody, or control, and supports this assertion with allegations that set forth his efforts to trace the path of the Post-Petition Sale Proceeds from internet transactions undertaken on the "buydashtrims" website, to eBay, PayPal, and bank accounts in Ms. Soshkin's name.

The Trustee also notes that the allegations that comprise his turnover claim here are "substantially similar, and in most instances virtually identical," to the allegations in his turnover claim in the Brizinova Adversary. Opp. Mem. at 10. According to the Trustee, because the Court held in its Brizinova Decision that these allegations adequately set forth each of the required elements of a turnover claim, under the law of the case doctrine, those same allegations should be sufficient here to withstand Ms. Soshkin's motion to dismiss.

To allege adequately this element of a turnover claim, the Complaint must state that the property at issue is in the possession, custody, or control of an entity other than the Debtors. Here, the Trustee alleges that the eBay user account "buydashtrims" was linked to ENSI and is registered to Ms. Soshkin, and that "sale proceeds derived from ENSI's . . . post-Petition Date sales . . . were deposited [to a] PayPal account registered to [Ms. Soshkin]." Compl. ¶ 12.

For these reasons, and based on the entire record, the Court concludes that the Trustee adequately alleges the first element of a claim under Bankruptcy Code Section 542 for turnover of the Post-Petition Sale Proceeds, that the property at issue is in the possession, custody, or control of another entity, here, Ms. Soshkin.

<u>Whether the Trustee Adequately Alleges that the Property at Issue Is Property that He May Use, Sell, or Lease</u>

The second element that the Trustee must allege to state a Section 542(a) claim is that the property at issue is property that the Trustee may use, sell, or lease under Bankruptcy Code Section 363. Such property is defined broadly by Section 541 and includes "all legal or equitable interests of the debtor in property as of the commencement of the case" as well as "[p]roceeds, product, offspring, rents, or profits of or from property of the estate." 11 U.S.C. § 541(a)(1), (a)(6). And as this Court has found, this element is adequately pleaded where the plaintiff seeks the turnover of *property of the estate* that can be put to use in connection with the *administration of the estate*, including paying the claims of creditors and the costs of administration of the estate. *In re Brizinova*, 554 B.R. at 77.

Ms. Soshkin argues that the Trustee's turnover claim is not viable because in defining the scope of the Debtors' estate, the Trustee "blurs the boundaries of estate and make[s] it all encompassing," resulting in an improper construction of the term "estate." Mot. to Dismiss at 5-6. She argues, in substance, that the Post-Petition Sale Proceeds belong to ENSI, which is not in bankruptcy, not to the Debtors, and that they are simply not property of the estate. For these reasons, she concludes, the Trustee does not adequately allege this element of his turnover claim.

The Trustee responds that the Post-Petition Sale Proceeds are property of the Debtors' estate as provided for in Bankruptcy Code Section 541. He argues that they are "proceeds and profits from the same entity, ENSI, as to which the Debtors' estate holds the 100% ownership interest," and constitute property of the estate as set forth in Bankruptcy Code Section 541(a)(6). Opp. Mem. at 7. And here too, he argues that the Complaint adequately states a turnover claim because it is substantially the same claim that he asserted in the Brizinova Adversary, and it survived a motion to dismiss there.

As noted above, Bankruptcy Code Section 541 provides the framework to determine whether property is "property of the estate."  With these concepts in mind, whether the second element of the Trustee's claim is adequately alleged turns on whether proceeds from the sale of ENSI assets – the Post-Petition Sale Proceeds – are "proceeds" of property of the estate as contemplated by Section 541(a)(6).

It is beyond doubt that where a debtor owns the shares of a corporation, a sale of those shares for cash or other consideration results in "proceeds."  In such a transaction, all that has occurred is that property of the estate has changed from one form – shares of stock – to another form – cash or other consideration.  But the parties have not cited, and the Court has not found, controlling or persuasive authority to support the Trustee's assertion that in these circumstances, the proceeds of a sale of a non-debtor corporation's *assets* should be afforded the same treatment as the proceeds of a sale of its *shares*.

This is consistent with principles that are long and well established.  Courts in New York recognize that there is a difference between ownership of a corporation's shares and ownership of its assets.  Long ago, the New York Court of Appeals observed:

> [T]he corporation in respect of corporate property and rights is entirely distinct from the stockholders who are the ultimate or equitable owners of its assets . . . even complete ownership of capital stock does not operate to transfer the title to corporate property and . . . ownership of capital stock is by no means identical with or equivalent to ownership of corporate property.

*Brock v. Poor*, 216 N.Y. 387, 401 (1915).

To similar effect, the Second Circuit found that under New York law, "shareholders do not hold legal title to any of the corporation's assets.  Instead, the corporation – the entity itself – is vested with the title."  *U.S. v. Wallach*, 935 F.2d 445, 462 (2d Cir. 1991) (*citing* 5A *Fletcher Cyclopedia of the Law of Private Corps.* § 2213, at 323 (Perm. ed. 1990)).

20

And as Chief Judge Craig noted:

> A corporation has a separate identity from its owners and, therefore, assets held by corporate entities are not property of an individual shareholder's bankruptcy estate. Rather, the ownership interest is property of the shareholder's bankruptcy estate.

*Pereira v. Dieffenbacher (In re Dieffenbacher)*, 556 B.R. 79, 85 (Bankr. E.D.N.Y. 2016) (quotation and internal citation omitted).

Applying these principles here, Debtor Brizinova's ownership of *ENSI's shares* does not give her legal title to, or an ownership interest in, *ENSI's assets*, because ENSI has legal title to, and owns, those assets. And if she does not have a "legal or equitable interest[]" in ENSI's assets, then they are not property of her estate under Bankruptcy Code Section 541(a), and the Trustee is not entitled to their turnover under Bankruptcy Code Sections 542 and 541(a)(6).

For these reasons, and based on the entire record, the Court concludes that the Trustee does not adequately allege the second element of a claim under Bankruptcy Code Section 542 for turnover of the Post-Petition Sale Proceeds, that the property at issue is property that the Trustee may use under Bankruptcy Code Section 363 as "proceeds of or from property of the estate."

<u>Whether the Trustee Adequately Alleges that the Property at Issue Is of More than Inconsequential Value to the Estate</u>

The third element that the Trustee must allege to state a Section 542(a) claim is that the property at issue is of greater than inconsequential value to the bankruptcy estate.

Ms. Soshkin argues, in substance, that the Post-Petition Sale Proceeds are of inconsequential value to this bankruptcy estate because they are not property of the estate, and that "no assets of ENSI have been removed." Mot. to Dismiss at 10.

The Trustee responds, in substance, that the Post-Petition Sale Proceeds are of consequence to the estate because he values them in an amount of at least $42,431.66, plus interest.

There is no single test to determine whether property is of greater than inconsequential value to a debtor's Chapter 7 estate.  One method noted by courts is to compare the amount of claims filed in a debtor's bankruptcy case to the value of the property that the trustee seeks to recover.  *Calvin v. Wells Fargo Bank, N.A. (In re Calvin)*, 329 B.R. 589, 598 (Bankr. S.D. Tex. 2005) (concluding that where the value of the property sought to be turned over represented seven percent of all claims, that was "not an insignificant portion" and the property was not of inconsequential value to the estate).  Another is to show that "some method of sale holds a reasonable prospect of a meaningful recovery in excess of" the debtor's exemption in the asset. *In re Burgio*, 441 B.R. 218, 221 (Bankr. W.D.N.Y. 2010).

Here, a review of the Complaint shows that the Trustee alleges, among other things, that the Post-Petition Sale Proceeds are estimated to be at least $42,431.66.  And the claims register shows that some $92,000 in unsecured claims have been filed.  That is, the Post-Petition Sale Proceeds that the Trustee seeks to recover have an alleged value that would be sufficient to pay a meaningful dividend to unsecured creditors.  This is sufficient to allege that the property at issue would be of greater than inconsequential value to the estate.[2]

For these reasons, and based on the entire record, the Court concludes that the Trustee adequately alleges the third element of a claim under Bankruptcy Code Section 542 for turnover

---

[2]  Another consideration, in the appropriate circumstances, may be the extent of the administrative costs likely to be associated with recovery of the property at issue.  This Court leaves for another day the question of whether this element or claim may be alleged adequately where the record shows that the cost of obtaining the asset approaches or even exceeds the value of the asset.

of the Post-Petition Sale Proceeds, that the property at issue – if it were property of the estate –

has more than inconsequential value to the debtor's estate.

Whether Laches Bars the Trustee's Section 542(a) Claim

Ms. Soshkin argues that even if the Trustee has asserted a colorable claim under Section

542, this claim should be dismissed because the Trustee brought this action more than five years

after the Debtors commenced their bankruptcy case.  Ms. Soshkin acknowledges that there is no

statute of limitations for turnover actions, but that "does not mean the Court is powerless" to

require that a turnover action be commenced within a reasonable time.  Reply at 19.  And she

notes that because turnover is an equitable remedy, it is "subject to laches."  *Id.*

The Trustee responds that his claim is timely because it could not have been discovered

until recently, and alternatively, that he states a claim for at least the three-year period before he

commenced this adversary proceeding.

Courts have found that Bankruptcy Code Section 542 addresses equitable relief and as

such, is not subject to an explicit statute of limitations.  *See Ball v. Soundview Composite Ltd. (In*

*re Soundview Elite Ltd.)*, 2014 U.S. Dist. LEXIS 91267, at *18 (S.D.N.Y. 2014) (stating that

"turnover proceedings are inherently equitable in nature.").  *See Krohn v. Burton (In re Swift)*,

496 B.R. 89, 99 (Bankr. E.D.N.Y. 2014) (stating that "[w]hile a turnover action is not subject to

a statute of limitations," such an action must "be commenced within a reasonable time.").

But turnover actions under Section 542 are "subject to equitable defenses, such as laches,

equitable estoppel, waiver, and acquiescence."  *In re Swift*, 496 B.R. at 99.  Accordingly, a

plaintiff in a Section 542 action must assert the claim within "a reasonable period of time."  *De*

*Berry v. Schmukler (In re De Berry)*, 59 B.R. 891, 898 (Bankr. E.D.N.Y. 1986).  What is

reasonable depends on the facts and circumstances of each case, and at least one court has held

that a trustee should be barred from bringing a claim under Section 542 after a delay of more than four years. *Id.*

Laches is an affirmative defense, and it is Ms. Soshkin's burden to show that laches should serve as a bar to the Trustee's turnover claim. When considering a defense of laches, courts may consider factors including "(1) proof of delay in asserting a claim despite the opportunity to do so (2) lack of knowledge on the part of the defendants that a claim would be asserted, and (3) prejudice to the defendants by the allowance of the claim." *In re Cutillo*, 181 B.R. 13, 15 (Bankr. N.D.N.Y. 1995). To similar effect, courts agree that the "mere passage of time is insufficient to constitute laches." *Id.*

Here, the record shows that the Debtors commenced their Chapter 7 bankruptcy case on April 24, 2012, and the Trustee filed this Complaint on November 9, 2017, more than five years later. While Ms. Soshkin has shown that a considerable period of time passed from the Debtors' commencement of their bankruptcy case to the filing of this action, at this stage in these proceedings, she has not established that the Trustee delayed in asserting this claim "despite the opportunity to do so." *Id*. Nor has Ms. Soshkin shown, at this juncture, that she did not know that this claim would be asserted, or that she has been prejudiced by the delay. The question of laches may be raised and adjudged at some future point in these proceedings.

For these reasons, and based on the entire record, the Court concludes that Ms. Soshkin has not established at this stage in these proceedings that the Trustee's turnover claim is barred by laches.

*        *        *

In sum, the Court has carefully considered each of the arguments advanced by Ms. Soshkin with respect to whether the Trustee adequately alleges the First Claim for Relief, for

turnover of the Post-Petition Sale Proceeds under Bankruptcy Code Section 542(a).  The Court concludes that the Trustee adequately alleges the first element of this claim, that the property is in the possession, custody, or control of Ms. Soshkin.  And the Trustee adequately alleges the third element of his claim, that the Post-Petition Sale Proceeds have value to the estate.

But the Trustee does not adequately allege the second element of his turnover claim, that the Post-Petition Sale Proceeds are property of the estate that the Trustee may use, because he does not adequately allege that the Post-Petition Sale Proceeds are property of the estate, and the Trustee is entitled to use only such property.  And separately, Ms. Soshkin has not established, at this stage in these proceedings, that the Trustee's claim is barred by laches.

For these reasons, and based on the entire record, the Defendant's Motion to Dismiss the Trustee's First Claim for Relief, for turnover of the Post-Petition Sale Proceeds, is granted.

### *Whether the Trustee States a Claim for Conversion*

The Trustee's Second Claim for Relief is for conversion of estate property under New York common law.  By this claim, the Trustee seeks to recover the Post-Petition Sale Proceeds from Ms. Soshkin.

The Trustee must allege two elements to state a conversion claim under New York law. These are:  "first . . . legal ownership or an immediate superior right of possession to a specific identifiable thing (i.e., specific money); and, second . . . that the defendant exercised unauthorized dominion over the thing in question, to the exclusion of the plaintiff's rights." *AMF Inc. v. Algo Distribs., Ltd.*, 48 A.D.2d 352, 356-57 (N.Y. App. Div. 2d Dep't 1975) (citation omitted).

### Whether the Trustee Adequately Alleges that the Estate Had Title to a Specific Identifiable Thing or a Right to Its Possession

The first element that the Trustee must allege to state a conversion claim is that the estate had legal ownership of, or a right to possess, a specific identifiable thing, here, the Post-Petition Sale Proceeds. This element has two parts: a plaintiff must allege (1) title or a right to possess (2) a specifically identifiable thing.

Ms. Soshkin argues that the Trustee does not – and cannot – allege this element with respect to the Post-Petition Sale Proceeds. She argues that the Trustee's allegations fall short because "the estate did not have a possessory right" in the assets of ENSI, so that Ms. Soshkin could not have exercised dominion over any such assets in derogation of the Trustee's rights. Mot. to Dismiss at 11.

The Trustee responds that in the Brizinova Decision, this Court sustained the adequacy of the conversion claim set forth in the Brizinova Adversary. Citing the law of the case doctrine, he states that because his conversion claim here is "substantially similar" to the claim in the Brizinova Adversary, he adequately alleges a claim "for conversion of the Post-Petition Sale Proceeds." Opp. Mem. at 10.

It is plain that "in a Chapter 7 bankruptcy, a trustee has the general duties of gathering the estate assets, liquidating them, distributing the proceeds to creditors, and closing the estate." *In re Smith*, 426 B.R. 435, 440-41 (E.D.N.Y. 2010) (citing *United States v. Shadduck*, 112 F.3d 523, 531 (1st Cir. 1997)), *aff'd*, 645 F.3d 186 (2d Cir. 2011). And as this Court has previously stated, "[t]he Bankruptcy Code provides tools for trustees to marshal the assets of an estate." *In re Khan*, 2014 WL 4956676, at *22 (Bankr. E.D.N.Y. Sept. 30, 2014). But first, the property at issue must be property of the estate.

Under New York law, "[i]t is well-settled . . . that an action for the conversion of monies is 'insufficient as a matter of law unless it is alleged that the money converted was in specific

tangible funds of which claimant was the owner and entitled to immediate possession.'" *Buena Vista Home Ent., Inc. v. Wachovia Bank, N.A. (In re Musicland Holding Corp.)*, 386 B.R. 428, 440 (S.D.N.Y. 2008) (quoting *Ehrlich v. Howe*, 848 F. Supp. 482, 492 (S.D.N.Y. 1994)), *aff'd*, 318 F. App'x 36 (2d Cir. 2009).  As one court explained, "the money must be 'described or identified in the same manner as a specific chattel.'"  *Global View Ltd. Venture Capital v. Great Cent. Basin Expl., L.L.C.*, 288 F. Supp. 2d 473, 480 (S.D.N.Y. 2003) (quoting *9310 Third Ave. Assocs., Inc. v. Schaeffer Food*, 210 A.D.2d 207, 208 (N.Y. App. Div. 2nd Dep't 1994)).  Dismissal may be appropriate where the funds at issue were not "a specific, identifiable fund and an obligation to return or otherwise treat in a particular manner the specific fund in question."  *Mfrs. Hanover Tr. Co. v. Chem. Bank*, 160 A.D.2d 113, 124, (N.Y. App. Div. 1st Dep't 1990) (citations omitted).

Here, with respect to the question of the estate's ownership interest in specifically identified property – the Post-Petition Sale Proceeds – a review of the Complaint shows that the Trustee alleges that Ms. Soshkin converted "the estate's 100% interest . . . in the Post-Petition Sale Proceeds . . . in an amount to be determined at trial, currently estimated to be at least $42,431.66."  Compl. ¶¶ 21, 22.  The Trustee identifies generally how ENSI assets became the Post-Petition Sale Proceeds, the accounts where the Post-Petition Sale Proceeds were deposited, how the sale proceeds were transferred to Ms. Soshkin, and other information to identify the funds constituting the Post-Petition Sale Proceeds as those that she converted.  For these reasons, the Trustee adequately alleges a specifically identifiable thing, the $42,431.66 in Post-Petition Sale Proceeds.  But as noted above, because the Trustee does not adequately allege that the Post-Petition Sale Proceeds are "proceeds of or from property of the estate," he also does not adequately allege that he has title or a right to possess the Post-Petition Sale Proceeds.

27

For these reasons, and based on the entire record, the Court concludes that the Trustee does not adequately allege the first element of his conversion claim, that the Trustee had title to or a right to possess the Post-Petition Sale Proceeds.

<u>Whether the Trustee Adequately Alleges that the Defendant Exercised Unauthorized Dominion over the Identified Property</u>

The second element that the Trustee must allege to state a conversion claim is that Ms. Soshkin exercised unauthorized dominion over the property at issue.

Here too, Ms. Soshkin argues, in substance, that this element is not satisfied with respect to the Post-Petition Sale Proceeds because this property either is not in her possession or does not exist as property of the estate, so that Ms. Soshkin cannot exercise unauthorized dominion over it sufficient to give rise to a conversion claim.

And here too, the Trustee responds that in the Brizinova Decision, this Court ruled that his conversion claim in the Brizinova Adversary was adequately pleaded, that his conversion claim here is "substantially similar" to his conversion claim in the Brizinova Adversary, and so under the law of the case doctrine and relevant case law, he has set forth a legally sufficient claim for conversion.

Here, a review of the Complaint shows that the Trustee alleges, among other things, that Ms. Soshkin "willfully, knowingly and wrongly has exercised dominion and control over" property at issue, namely the Post-Petition Sale Proceeds.  Compl. ¶ 21.  But as noted above, because the Trustee does not adequately allege that the Post-Petition Sale Proceeds are property of the estate or "proceeds of or from property of the estate," as opposed to property of ENSI, he does not adequately allege that Ms. Soshkin exercised *unauthorized* dominion over estate assets.

28

For these reasons, and based on the entire record, the Court concludes that the Trustee does not adequately allege the second element of his conversion claim, that Ms. Soshkin exercised unauthorized dominion over the Post-Petition Sale Proceeds.

*          *          *

In sum, the Court has carefully considered each of the arguments advanced by Ms. Soshkin with respect to whether the Trustee adequately alleges the Second Claim for Relief, for conversion.  The Court concludes that the Trustee does not adequately allege the first element of his conversion claim, that he had title to or a right to possess the Post-Petition Sale Proceeds. The Court also concludes that the Trustee does not adequately allege the second element of his conversion claim, that Ms. Soshkin exercised unauthorized dominion over the Post-Petition Sale Proceeds.

For these reasons, and based on the entire record, the Defendant's Motion to Dismiss the Trustee's Second Claim for Relief, for conversion of the Post-Petition Sale Proceeds, is granted.

_Whether the Trustee States a Claim for Violation of the Automatic Stay Under Bankruptcy Code Section 362(a)_

The Trustee's Third Claim for Relief seeks a declaratory judgment, an injunction, and actual and punitive damages arising from Ms. Soshkin's alleged violations of the automatic stay pursuant to Section 362(a).  That Section provides that "a [bankruptcy] petition filed under section 301, 302, or 303 of this title . . . operates as a stay, applicable to all entities . . . of any act to . . . exercise control over property of the estate."  11 U.S.C. § 362(a)(3).  Actions in violation of the automatic stay may trigger serious consequences, including an award of "actual damages, including costs and attorneys' fees, and, in appropriate circumstances . . . punitive damages."  11 U.S.C. § 362(k).

The Trustee must allege three elements to state a claim based upon a violation of the automatic stay. These are first, that the automatic stay was in effect at the time of the alleged violation; second, that the property at issue was property of the estate; and third, that the conduct in question constitutes a violation of the automatic stay.

<u>Whether the Trustee Adequately Alleges that the Automatic Stay Was In Effect at the Time of the Alleged Violation</u>

The first element that the Trustee must allege to state a claim based upon a violation of the automatic stay is that a stay was in effect at the time of the alleged violation.

Ms. Soshkin asserts that the Post-Petition Sale Proceeds are not estate property, and that the "[e]state can only be damaged if something is take[n] away from the estate." Mot. to Dismiss at 13. She argues, in substance, that she did not violate the automatic stay because the property at issue – the Post-Petition Sale Proceeds – was property of ENSI, not the Debtor Brizinova, and "[t]here was no stay regarding ENSI." Reply at 20. And Ms. Soshkin asks, since there was no stay with respect to ENSI, "where is the violation of the stay?" Reply at 20.

The Trustee responds, in substance, that he adequately alleges this claim for many of the same reasons that he adequately asserts his Section 542(a) turnover claim, and concludes that based on this Court's ruling sustaining his stay violation claim in the Brizinova Adversary, and pursuant to the law of the case doctrine, the motion to dismiss should be denied. Opp. Mem. at 13.

The starting point for any claim for relief arising from a stay violation is the language of the Bankruptcy Code. Section 362(a) provides that a "petition filed under . . . this title . . . operates as a stay, applicable to all entities, of . . . any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3).

The automatic stay "is effective immediately upon the filing of the petition . . . and any proceedings or actions described in section 362(a)(1) are void and without vitality if they occur after the automatic stay takes effect." *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 527 (2d Cir. 1994) (citing *48th St. Steakhouse, Inc. v. Rockefeller Grp., Inc. (In re 48th St. Steakhouse, Inc.)*, 835 F.2d 427, 431 (2d Cir. 1987), *cert. denied*, 485 U.S. 1035 (1988)) (internal citations omitted).

Here, the Complaint states, among other things, that after the Debtors filed their bankruptcy case – and therefore after the automatic stay was in effect – Ms. Soshkin, with knowledge that the Trustee had become the owner of Debtor Brizinova's one hundred percent interest in ENSI, violated the automatic stay by causing post-petition sales of ENSI auto parts, depositing the sale proceeds into her PayPal account, and using the Post-Petition Sale Proceeds for her own or her family's use, which damaged the estate. That is, the Trustee alleges that Ms. Soshkin took steps to exercise control over and transfer the property at issue, in the form of the Post-Petition Sale Proceeds, after the Debtors filed their bankruptcy case, when the automatic stay was in effect.

For these reasons, and based on the entire record, the Court concludes that the Trustee adequately alleges the first element of his Bankruptcy Code Section 362 stay violation claim, that the automatic stay was in effect at the time of the alleged violation.

Whether the Trustee Adequately Alleges that the Property at Issue Was Property of the Estate

The second element that the Trustee must allege to state a claim based upon a violation of the automatic stay is that the property at issue was property of the estate.

Here again, Ms. Soshkin argues, in substance, that the Trustee cannot state a plausible claim for violation of the automatic stay because this element requires the Trustee to allege that

31

the property at issue – the Post-Petition Sale Proceeds – is property of the estate, and here, ENSI is not a debtor, and its assets are not property of the estate.

And here again, the Trustee responds, in substance, that he adequately alleges this claim for many of the same reasons that he adequately asserts his Section 542(a) turnover claim, and that the Complaint adequately identifies the Post-Petition Sale Proceeds as property of the estate.

The Complaint states, among other things, that after the Debtors filed their bankruptcy case, Ms. Soshkin violated the automatic stay by causing the post-petition sale of ENSI auto parts, and converting the sales proceeds, which were estate property. But because ENSI is not a debtor, and because the Trustee does not adequately allege that the Post-Petition Sale Proceeds are "proceeds of or from property of the estate," he does not adequately allege the second element of his stay violation claim, that the Post-Petition Proceeds are property of the estate.

For these reasons, and based on the entire record, the Court concludes that the Trustee does not adequately allege the second element of his Bankruptcy Code Section 362 stay violation claim, that the property at issue was property of the estate.

<u>Whether the Trustee Adequately Alleges that the Conduct in Question Violates the Automatic Stay</u>

The third element that the Trustee must allege to state a claim based upon a violation of the automatic stay is that the conduct in question violates the automatic stay.

Ms. Soshkin argues, in substance, that the Trustee cannot state a plausible claim for violation of the automatic stay because ENSI is not a debtor, and that "there was no stay regarding ENSI." Reply at 20.

The Trustee responds, in substance, that he adequately alleges this claim for many of the same reasons that he adequately asserts his Section 542(a) turnover claim, and that the

Complaint adequately identifies conduct, including retention and transfers of the Post-Petition Sale Proceeds, that violate the automatic stay.

Here, the Complaint states that Ms. Soshkin violated the automatic stay by causing the post-petition sale of ENSI auto parts, depositing the proceeds derived from those sales into her PayPal account, and using certain of the Post-Petition Sale Proceeds for personal purchases for herself and her family.

But here too, because ENSI is not a debtor, and because the Trustee does not adequately allege that the Post-Petition Sale Proceeds are "proceeds of or from property of the estate," he does not adequately allege the third element of his claim under Bankruptcy Code Section 362 for a stay violation, that the conduct in question violates the automatic stay, because actions with respect to property that is not property of the estate simply do not violate the automatic stay.

*          *          *

In sum, the Court has carefully considered each of the arguments advanced by Ms. Soshkin with respect to whether the Trustee adequately alleges the Third Claim for Relief, for a declaratory judgment that she violated the automatic stay, an order enforcing the stay and enjoining further transfers of the Post-Petition Proceeds, damages in the amount of at least $42,431.66, plus interest, and punitive damages. The Court concludes that the Trustee adequately alleges the first element of his stay violation claim, that the automatic stay was in effect at the time of the alleged violation. But the Trustee does not adequately allege the second element of this claim, that the property at issue was property of the estate, or the third element of this claim, that the conduct in question violates the automatic stay.

For these reasons, and based on the entire record, the Defendants' Motion to Dismiss the Trustee's Third Claim for Relief, for violations of the automatic stay, is granted.

<u>The Question of Leave To Replead</u>

Federal Rule of Civil Procedure 15, made applicable here by Bankruptcy Rule 7015, states that permission to amend a complaint should be freely granted "when justice so requires." Fed. R. Civ. P. 15(a)(2). As the Supreme Court observed more than fifty years ago, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

And as this Court has noted, "[w]here a plaintiff has made a single attempt to state a claim, and the prospect of a plausible claim is suggested, but not established, by the allegations, then it may be that a court's discretion should tip in favor of allowing an amendment." *Ridley v. Deutsche Bank Nat'l Tr. Co.* (*In re Ridley*), 453 B.R. 58, 77 (Bankr. E.D.N.Y. 2011). At the same time, this Court has also noted that "where a proposed amended pleading would not survive a motion to dismiss, it is within a trial court's discretion to deny leave to replead." *In re Ridley*, 453 B.R. at 77.

Ultimately, the question of leave to replead is committed to the sound discretion of the court. As one court has stated, "it is well-established in the Second Circuit that leave to amend should be granted freely though the district court may exercise its discretion to deny a motion to amend if there is a good reason for it." *In re Ashanti Goldfields Sec. Litig.*, 2004 WL 626810, at *2 (E.D.N.Y. Mar. 30, 2004) (citation omitted).

The Court notes that this is the Trustee's first attempt to state these claims against Ms. Soshkin. The Court also recognizes that each of the Trustee's claims falls short for substantially the same reason – that the Trustee does not adequately allege that the Post-Petition Sale Proceeds are property of the Debtors' estate. Based on the entire record, and noting that the question is a

close one, the Court is satisfied that the "the prospect of a plausible claim is suggested," but not established, in the Complaint. *In re Ridley*, 453 B.R. at 77.

For these reasons, and based on the entire record, leave to replead is granted with respect to each of the claims in the Complaint.

<u>**Conclusion**</u>

For the reasons stated herein, the Motion to Dismiss is granted, and leave to replead is allowed. An order in accordance with this Memorandum Decision shall be entered simultaneously herewith.



**Dated: Brooklyn, New York**
**July 20, 2018**

**Elizabeth S. Stong**
**United States Bankruptcy Judge**